132 F.3d 1259
 55 Soc.Sec.Rep.Ser. 21, Medicare & Medicaid Guide P
45,779,
97 Cal. Daily Op. Serv. 9001,
97 Daily Journal D.A.R. 14,555
BEVERLY COMMUNITY HOSPITAL ASSOCIATION, a California
non-profit public benefit corporation, d/b/a Beverly
Hospital; Bellwood Medical Corporation, d/b/a Bellwood
General Hospital; Chico Community Hospital Medical Center,
Inc., d/b/a Chico Community Rehabilitation Hospital, d/b/a
Chico Community Hospital; Hollywood Community Hospital
Medical Center, Inc., d/b/a Hollywood Community Hospital Of
Van Nuys, d/b/a Hollywood Community Hospital Of Hollywood;
Lancaster Hospital Corporation, d/b/a Lancaster Community
Hospital, et al., Plaintiffs-Appellees,
v.
Kimberly BELSHE, Director of the California Department of
Health Services, Defendant-Appellant.
CALIFORNIA AMBULANCE ASSOCIATION, Plaintiff-Appellee,
v.
Donna E. SHALALA, Secretary of the United States Department
of Health and Human Services, Defendant,
and
Kimberly Belshe, Director of the California Department of
Health Services, Defendant-Appellant.
CALIFORNIA AMBULANCE ASSOCIATION, Plaintiff-Appellee,
v.
Donna E. SHALALA, Secretary of United States Department of
Health and Human Services, Defendant-Appellant.
CALIFORNIA MEDICAL ASSOCIATION; California Academy Of
Family Physicians; California Society Of Anesthesiologists;
California Urological Association; California Chapter Of
The American College Of Emergency Physicians; California
Chapter Of The American College Of Cardiology; California
Society Of Internal Medicine; California Society Of
Physical Medicine & Rehabilitation; California Radiology
Society, Chapter Of The American College Of Radiology,
Plaintiffs-Appellees,
v.
Donna E. SHALALA, Secretary of United States Department of
Health and Human Services; S. Kimberly Belshe,
Director of the California Department of
Health Services,
Defendants-Appellants.
Richard GILMORE, M.D.; Saraf Protap, M.D., Plaintiffs-Appellees,
v.
Donna E. SHALALA, Secretary of the United States Department
of Health and Human Resources, Defendant,
S. Kimberly Belshe, Director of Health Services,
Defendant-Appellant.
Richard GILMORE, M.D., individually and on behalf of all
those similarly situated; Pratap Saraf, M.D.,
individually and on behalf of all those
similarly situated, Plaintiffs-Appellees,
v.
Donna E. SHALALA, Ph.D., Secretary of the United States
Department of Health and Human Services; S.
Kimberly Belshe, Director of the
California Department of
Health Services,
Defendants-
Appellants.
CALIFORNIA MEDICAL ASSOCIATION; California Academy Of
Family Physicians; California Society Of Anesthesiologists;
California Urological Association; California Chapter Of
The American College Of Emergency Physicians; California
Chapter Of The American College Of Cardiology; California
Society Of Internal Medicine; California Society Of
Physical Medicine & Rehabilitation; California Radiology
Society, Chapter Of The American College Of Radiology,
Plaintiffs-Appellees,
v.
Donna E. SHALALA, Secretary of the United States Department
of Health and Human Services, Defendant-Appellant.
Donald R. MacPHERSON, Jr., as Successor in interest to
decedent Christina MacPherson & MacPherson Oil
Company Employee Welfare Benefit Plan,
Plaintiff-Appellant,
v.
EMPLOYERS HEALTH INSURANCE, Defendant-Appellee.
 Nos. 97-55022, 96-55208, 97-55713, 96-56249, 96-56485,
96-56648, 96-56699 and 96-56745.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1997.
Decided Dec. 2, 1997.
 
 1
 Laurie R. Pearlman, California Attorney General, Los Angeles, California, for defendant-appellant Belshe.
 
 
 2
 John R. Hellow, Byron J. Gross, Michele Melden and Kevin M. Corbett (on brief), Hooper, Lundy & Bookman, Inc., Los Angeles, California, for plaintiffs-appellees Beverly Community Hosp. Ass'n.
 
 
 3
 Alisa B. Klein, United States Department of Justice, Civil Division, Washington, DC, for the amicus.
 
 
 4
 Charlton G. Holland III and Ralph Johnson, California Attorneys General, San Francisco, California; Alisa B. Klein, United States Department of Justice, Civil Division, Washington, DC, for defendants-appellants Belshe and Shalala.
 
 
 5
 William J. Bush, Hanson, Bridgett, Marcus, Vlahos & Rudy, LLP, San Francisco, California, for plaintiffs-appellees California Ambulance Ass'n.
 
 
 6
 Michael A. Greene, Greenburg, Glusker, Fields, Claman & Machtinger LLP, Los Angeles, California; Bruce S. Sperling, Sperling, Slater & Spitz, P.C., Chicago, Illinois; Harvey J. Barnett, Harvey J. Barnett & Associates, P.C., Chicago, Illinois, for plaintiff-appellee Gilmore..
 
 
 7
 Appeal from the United States District Court for the Central District of California; J. Spencer Letts, District Judge, Presiding. D.C. Nos. CV-95-04053-JSL, CV-96-02322-JSL, CV-96-2322-JSL, CV-03033-JSL, CV-96-05564-JSL, CV-96-03033-JSL, CV-97-00514-JSL.
 
 
 8
 Before: REINHARDT and TASHIMA, Circuit Judges, and SHADUR, District Judge.*
 
 SHADUR, District Judge:
 
 9
 We address here a question of first impression, not only in this Circuit but (understandably in light of the recency of the legislation involved) in any court: whether a congressional enactment adopted in August 1997, but stating that it is retroactive and applicable to pending cases, calls for approval of the reading that has been given to the pre-enactment version of the same legislation by the Secretary of the United States Department of Health and Human Services ("Secretary"). Because we answer that question in the affirmative, we reverse all three decisions below.[1]
 
 
 10
 All three of these sets of appeals pose a common problem: whether the State of California may choose to limit certain payments, as required by statute to be made to enroll poor people-qualified Medicare beneficiaries ("QMBs")-in the Medicare insurance program, to the amount by which California's Medicaid rate exceeds what Medicare has paid. Those payments, required from all participating states under the Medicaid Act, extend to deductibles, coinsurance and copayments that the QMBs cannot bear fully and that the State is required to pay on their behalf (whether totally or in part is at stake in these cases).
 
 
 11
 Title XVIII of the Social Security Act (the "Medicare Act," 42 U.S.C. §§ 1395-1395ccc[2]) provides a federal health insurance program for elderly and disabled persons. Medicare Part A covers inpatient hospital services and certain related benefits (Sections 1395c-1395i-4), and it is provided automatically for individuals entitled to Social Security retirement or disability benefits (Section 426). Medicare Part B is a voluntary program under which Medicare-eligible persons can obtain supplemental insurance for various outpatient services from physicians and other providers (Sections 1395j-1395w-4). It is financed by a combination of federal funds and premiums paid by or on behalf of eligible individuals (Sections 1395r, 1395t(g)). Both Medicare Part A and Medicare Part B call for payments by covered individuals that constitute the deductibles, coinsurance and copayments referred to earlier.
 
 
 12
 Title XIX of the Social Security Act (the "Medicaid Act," Sections 1396-1396v) is a cooperative federal-state program that provides federal matching funds to states that elect to provide medical services to certain needy individuals (see Section 1396; Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980)). Although states are not required to participate in Medicaid, if they elect to do so they must follow federal guidelines (Harris, 448 U.S. at 301, 100 S.Ct. at 2680) and must submit for Secretary's approval their state plans that describe the states' intended means for insuring compliance with those guidelines (Section 1396a(b)).
 
 
 13
 What is at issue in these three sets of appeals is the area of overlap between the Medicare and Medicaid Acts where coverage for the elderly poor is involved. Those persons are often entitled to participate in such coverage but may not be able to afford to pay the required deductible and coinsurance amounts under Medicare Part A or the premiums and payments needed to enroll in Medicare Part B. At the time that the various lawsuits were filed below, Congress had dealt with individuals who are eligible for both Medicare and Medicaid (see Section 1396d(p)(1)) by stating in Section 1396a(n) of the Medicaid Act what the state plans could set up to cover their obligations on behalf of the QMBs involved.
 
 
 14
 Three types of plaintiffs (now appellees) are involved in these appeals. Beverly Hospital is a class action on behalf of all California hospitals that provide inpatient hospital services under the Medicare and Medicaid Acts. California Ambulance involves two types of associations, California Ambulance Association and physician associations including California Medical Association, each type of association also representing providers of services under the two statutes. And Gilmore was brought by two doctors who provide outpatient physician services to persons under the two statutes.[3] Thus Beverly Hospital involves Medicare Part A, while California Ambulance and Gilmore implicate Medicare Part B.
 
 
 15
 Secretary is an appellant in all of the cases except for Beverly Hospital, in which she was given leave to participate as an amicus curiae. Director S. Kimberly Belshe of the California Department of Health Services ("Director") is an appellant in all of the cases. Both appellants subscribe to Secretary's legal position pursuant to which California adopted its Medicaid state plan ("Medi-Cal"), which position asserts that under Section 1396a(n) participating States such as California have the choice to limit their payments as described earlier, so that they need not pay the full cost-sharing amount. In each of the cases before us the District Court rejected that contention, as have all four Courts of Appeals that have addressed the question: Rehabilitation Ass'n of Virginia, Inc. v. Kozlowski, 42 F.3d 1444 (4th Cir.1994)("Kozlowski "); Haynes Ambulance Serv., Inc. v. State of Alabama, 36 F.3d 1074 (11th Cir.1994)("Haynes "); Pennsylvania Med. Soc'y v. Snider, 29 F.3d 886 (3d Cir.1994)("Snider "); and New York City Health and Hosps. Corp. v. Perales, 954 F.2d 854 (2d Cir.1992)("Perales ").[4]
 
 
 16
 After the scheduled briefing of these appeals had been completed, Congress entered the picture. Its Balanced Budget Act of 1997 ("Act"), signed into law by the President on August 5 of this year, included as Act § 4714 a provision that expressly amends Section 1396a(n) to adopt the position advanced by Secretary and Director here:
 
 
 17
 (2) In carrying out paragraph (1), a State is not required to provide any payment for any expenses incurred relating to payment for deductibles, coinsurance, or copayments for medicare cost-sharing to the extent that payment under title XVIII for the service would exceed the payment amount that otherwise would be made under the State plan under this title for such service if provided to an eligible recipient other than a medicare beneficiary.
 
 
 18
 (3) In the case in which a State's payment for medicare cost-sharing for a qualified medicare beneficiary with respect to an item or service is reduced or eliminated through the application of paragraph (2)-
 
 
 19
 (A) for purposes of applying any limitation under title XVIII on the amount that the beneficiary may be billed or charged for the service, the amount of payment made under title XVIII plus the amount of payment (if any) under the State plan shall be considered to be payment in full for the service;
 
 
 20
 (B) the beneficiary shall not have any legal liability to make payment to a provider or to an organization described in section 1903(m)(1)(A) for the service; and
 
 
 21
 (C) any lawful sanction that may be imposed upon a provider or such an organization for excess charges under this title or title XVIII shall apply to the imposition of any charge imposed upon the individual in such case.
 
 
 22
 This paragraph shall not be construed as preventing payment of any medicare cost-sharing by a medicare supplemental policy or an employer retiree health plan on behalf of an individual.
 
 
 23
 There is no dispute among the litigants that if this new statutory provision (which Congress has captioned "Clarification Regarding State Liability for Medicare Cost-Sharing") is applicable, it requires the reversal of the District Court's decisions. One minor variant exists: Beverly Hospital contends that a remand is necessary because Secretary's methodology, as applied to that hospital's situation, does not mesh with the new enactment. We speak briefly to that question later.
 
 
 24
 Because Congress was deliberately targeting what were known to be existing disputes on this subject, Act § 4714(c) went on to prescribe a retroactive effective date of the quoted amendment:
 
 
 25
 (c) EFFECTIVE DATE.--The amendments made by this section shall apply to payment for (and with respect to provider agreements with respect to) items and services furnished on or after the date of the enactment of this Act. The amendments made by subsection (a) shall also apply to payment by a State for items and services furnished before such date if such payment is the subject of a law suit that is based on the provisions of sections 1902(n) and 1905(p) of the Social Security Act[5] and that is pending as of, or is initiated after, the date of the enactment of this Act.
 
 
 26
 That being the case, the relevant considerations in our three cases have shifted from those that had occupied the parties' entire scheduled briefing, which (as stated earlier) had been completed before the congressional enactment. We therefore invited and received supplemental briefing on the effect of Act § 4714 on these cases. And having done so, we eschew any analysis of those original arguments and turn instead to the validity and applicability of the August 1997 enactment.
 
 Standard of Review
 
 27
 Both because constitutional questions are at issue and because the cases come up on summary judgment, we engage in a de novo review of the district courts' final judgments (Gray v. First Winthrop Corp., 989 F.2d 1564, 1567 (9th Cir.1993) ("The constitutionality of a statute is a question of law which we review de novo"); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1047 (9th Cir.1995) (holding that an order granting summary judgment is reviewed de novo)). Each of the issues before us will be examined through that lens.
 
 Application of Act § 4714
 
 28
 At the outset we examine the coverage of these appeals by the new legislation-a matter that was challenged in the appellees' briefs but was not addressed by their counsel during oral argument. As the earlier-quoted Act § 4714(c) states, the new amendments apply to any payments by a State for items and services furnished pre-enactment as long as the payment "is the subject of a lawsuit ... that is pending as of ... the date of the enactment of this Act." In that respect it does not matter whether the congressional labeling of the new legislation as simply a "clarification" has to be credited by a court (a subject that we deal with in a moment). What is instead significant is that Congress' characterization plainly reflects its intention to resolve every still-live dispute in the manner specified by the new legislation. Hence the statutory reference to "pending" lawsuits must be construed as embracing not only undecided cases at the District Court level but also actions pending on appeal, such as the ones before us.
 
 
 29
 We have previously ascribed precisely that meaning to the term "pending" in Gray, 989 F.2d at 1571. There we cited and quoted from numerous earlier decisions upholding Congress' power to impact the results in cases still "pending" on appeal without running afoul of separation of powers principles:
 
 
 30
 These cases are properly construed as "pending" cases for separation of powers purposes. See Griffith v. Kentucky, 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987)(judgment is "final" and case is no longer pending only after "the availability of appeal [is] exhausted, and the time for a petition for certiorari [has] elapsed or a petition for certiorari finally [has been] denied"); see also Georgia Ass'n of Retarded Citizens v. McDaniel, 855 F.2d 805, 813 (11th Cir.1988)("When it so intends, [Congress'] ability to affect the content of a nonfinal judgment in a civil case, through retroactive legislation ceases only when a case's journey through the courts comes to an end."), cert. denied, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); de Rodulfa v. United States, 461 F.2d 1240, 1253 (D.C.Cir.) ("[T]he suit is pending until the appeal is disposed of, and until disposition any judgment appealed from it is still sub judice.") (internal quotations omitted), cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972).
 
 
 31
 And what Gray, id. then said, albeit in the different context of a change in a statute of limitations, applies with equal force to give identical content to the word "pending" in Act § 4714(c):
 
 
 32
 Because none of the cases here have completed their journey through the appellate process, Congress has the authority to change the underlying substantive law by altering the statute of limitations in a way that affects those pending cases.
 
 
 33
 Because Congress thus has such authority to change the law as to pending cases, its power to clarify the law-to confirm what the law has always meant-follows a fortiori.
 
 
 34
 That being the case, the next line of inquiry is whether the new enactment is valid in its application to such pending cases. On that score a key threshold issue is whether the enactment was truly a "clarification" of the prior statute (as Congress said), or was instead a substantial change in the law. If Act § 4714 were to be characterized in the latter fashion, its retroactive application would pose a series of potential constitutional problems. If however Act § 4714 merely clarifies what Section 1396a(n) was originally intended to mean, then the Medicaid Act never required states such as California to pay cost-sharing in full. In that event the only function of Act § 4714 in this situation is to state more clearly what the law already was-it has no retroactive effect that might be called into constitutional question. Because appellees do not dispute the constitutionality of the prospective application of Act § 4714, if that provision merely clarifies Section 1396a(n) there are also no potential constitutional problems with the application of the enactment to these pre-Act cases.
 
 
 35
 As already indicated, Congress expressly (and formally) stated as its intention that the new provision in Act § 4714 was a "clarification" of the payment rules contained in Section 1396a(n). It has been established law since nearly the beginning of the republic (as demonstrated by Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381-82 & n. 8, 89 S.Ct. 1794, 1801-02 & n. 8, 23 L.Ed.2d 371 (1969) and earlier cases cited there) that congressional legislation that thus expresses the intent of an earlier statute must be accorded great weight (see most recently Loving v. United States, 517 U.S. 748, ----, 116 S.Ct. 1737, 1749, 135 L.Ed.2d 36 (1996), quoting the Red Lion language as earlier repeated in Consumer Product Safety Comm'n v. GTE Sylvania, 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980); and see also the plurality opinion in United States v. Winstar Corp., 518 U.S. 839, ----, 116 S.Ct. 2432, 2463, 135 L.Ed.2d 964 (1996)(speaking in terms of "significant weight")).
 
 
 36
 Other cases that question the competence of a later Congress to opine on the intended meaning of an earlier statute are readily distinguishable. All of those cases have involved attempts to use less formal types of subsequent legislative history, particularly Senate and House Committee Reports, to infer the meaning of prior enactments (United States v. Southwestern Cable Co., 392 U.S. 157, 170, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968), rejecting the use of congressional opinions contained solely in House Committee Reports; Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072-73, 60 L.Ed.2d 609 (1979), rejecting the use of congressional opinions expressed only in Senate Report; and see Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 839-40, 108 S.Ct. 2182, 2190-91, 100 L.Ed.2d 836 (1988), rejecting the use not only of a later House Committee Report but also of the later enactment as such as bases for inferring the intent of an earlier Congress). By contrast, here Congress has formally declared Act § 4714 to be a clarification of Section 1396a(n) in the title of the Act as well as in the Committee Reports.[6] Such formal legislative action squarely fits the Red Lion mold as so often (and so recently) reconfirmed by later cases, so that Act § 4714 is entitled to great weight in construing the meaning of Section 1396a(n).
 
 
 37
 Appellees contend that Act § 4714 effected such a substantial change in federal law in terms of the government's liability to health care providers that it cannot be treated as simply clarifying Section 1396a(n). But that argument proceeds from the premise that Section 1396a(n)'s meaning was clear enough so as to need no further explanation. Not only does that premise ignore the split of authority construing the statute (though to be sure the four Court of Appeals opinions have uniformly rejected Secretary's reading), but even more significantly any quality of crystal clarity is uniformly recognized as totally absent from the Medicaid and Medicare statutes (thus even one of the cases relied on by appellees, Kozlowski, 42 F.3d at 1450, has pungently--and accurately--characterized the provisions detailing Medicaid and Medicare financing as "among the most completely impenetrable texts within human experience").
 
 
 38
 Section 1396a(n) is a superb example of the baffling nature of the statute. It has shown itself to be particularly resistant to a single simple interpretation, and hence particularly in need of clarification. While one battle has raged (with mixed results) over whether to accept Secretary's construction of the provision, even the courts that have rejected Secretary's approach have not expressed a single construction of the statute (compare Kozlowski, 42 F.3d at 1454, reading Section 1396a(n) to allow a state to exercise the option to pay more for a QMB than for a dual-eligible person; Perales, 954 F.2d at 859, stating "it appears that the reason that section a(n) authorizes payment beyond the Medicare amount, when it is required by another section, is to clarify that the Medicaid Act does not prohibit a provider from accepting more than the Medicaid rate"; and Snider, 29 F.3d at 895, holding that Section 1396a(n) "authorizes the states to deviate from their schedules or payment methods with respect to QMB Part B cost-sharing payments, thus carving out an exception to the general requirement to comply with the Medicaid fee schedules or payment methods"). Only Haynes, 36 F.3d at 1076, by following the interpretation established in Snider, avoids the spectre of four Courts of Appeals reaching the same result for four (rather than three) different reasons. Congress noted the existing confusion when it made the statement (really an understatement) that the amount that states were required to pay on behalf of QMBs was "the subject of some controversy" (H. Conf. Rep. No. 105-217, 143 Cong. Rec. H6252 (daily ed. July 29, 1997)).
 
 
 39
 Given the extraordinary difficulty that the courts have found in divining the intent of the original Congress, a decision by the current Congress to intervene by expressly clarifying the meaning of Section 1396a(n) is worthy of real deference. Appellees' arguments that Act § 4714 is new law, despite Congress' unambiguous title for that section, cannot override that deference, because those arguments incorrectly presume a clearly established meaning for Section 1396a(n)-something that simply did not exist before Act § 4714 was adopted.
 
 
 40
 We therefore honor Congress' "clarification" label and accept Act § 4714's provisions as a statement of what Section 1396a(n) has meant all along. That moots all of appellees' constitutional objections to the new legislation, because those objections rest entirely on the assertedly retroactive, rather than declaratory, nature of Act § 4714. But it is worth adding that we have, en route to our decision, carefully explored the litigants' arguments both as to the pre-Act version of Section 1396a(n) and as to the constitutional issues raised by appellees if Act § 4714 were to be viewed as a retroactive change in, rather than a declaratory clarification of, the prior law-questions implicating the separation of powers, the Contract Clause and the Due Process Clause. And that exploration, which necessitated an effort on our part to parse the intricate and complex provisions of the pre-Act legislation, has only deepened our conviction that Congress' stated intention of clarifying that pre-existing law should be credited.
 
 
 41
 That leaves only one tag end for discussion, a statutory claim raised by the plaintiff Association in No. 96-55208 ("Beverly") that is unique to it as a provider of inpatient medical services to QMBs under Medicare Part A. Beverly argues in its supplemental brief that Medi-Cal's methodology for reimbursing hospitals for their Medicare expenses under Part A is not legal under either Beverly's or Secretary's interpretation of Act § 4714(a)(2). Beverly urges this Court to affirm the district court's ruling below on that ground (under the familiar principle, as repeated in Herring v. FDIC, 82 F.3d 282, 284 (9th Cir.1995), that an appellate court may uphold a ruling on any basis that the record supports, even if it was not considered by the lower court).
 
 
 42
 But before an appellate court will consider such an issue, ordinarily the argument must have been raised sufficiently for the trial court to rule on it (A-1 Ambulance Serv. v. County of Monterey, 90 F.3d 333, 338 (9th Cir.1996), citing In re E.R. Fegert Inc., 887 F.2d 955, 957 (9th Cir.1989)). In this instance Beverly initially cited a single excerpt from the trial court record that it said had raised the statutory issue about Medi-Cal's Medicare Part A reimbursement policies. But post-argument its counsel has clarified its position as presenting a different assertion: that its current argument could not have been made below because it arose only as a result of standards set forth in the later-enacted Section 4714(a)(1), now codified as Section 1396a(n)(2).
 
 
 43
 We need not resolve that newly-raised contention, nor does it call for a remand rather than a reversal. Any claim that California is violating the new federal statute-something that is necessarily not encompassed within the scope of the record as it was presented to the trial court and is thus not on review in the appeal before us-really represents the basis for a new lawsuit. Any such claim would call for the generation of a new record, against which a trial court could determine in the first instance whether there is anything to the contention that Act § 4714's clarification of the prior law somehow renders the Medi-Cal reimbursement methodology for hospitals under Medicare Part A invalid. And in that respect the trial court would also have to determine whether despite the existence of the new enactment, Beverly's argument on that score is one that it could perhaps have raised the first time around, so that it might be held to have forfeited the argument by virtue of its not having done so in this original litigation.
 
 Conclusion
 
 44
 For the reasons that we have stated here at some length, we conclude that Act § 4714 is a clarification of the original intent of Congress when it passed Section 1396a(n). That being the case, the district courts' orders granting summary judgment in favor of each appellee are REVERSED. As a final point, we note that Director Belshe has not requested a remand in order to seek to recoup any excessive payments made pursuant to the district court's orders. We indicate no view as to her right to obtain any such relief.
 
 
 
 *
 The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 In each instance the jurisdiction of the district court was based upon 28 U.S.C. § 1331. All three judgments are appealable pursuant to 28 U.S.C. § 1291
 
 
 [2]
 All further citations to Title 42 provisions will take the form "Section-," utilizing the Title 42 numbering system rather than the internal numbering of the Acts involved
 
 
 [3]
 Although the Gilmore case was originally intended to be a class action, any need for class certification was obviated when defendants agreed that the result in the case would be followed as to all persons providing such services
 
 
 [4]
 Although this does not affect our resolution of these cases in light of what follows, it is worth noting that those four Courts of Appeals have employed divergent approaches (reading the statute differently) in reaching their conclusions. And it may be added that those four decisions (and the decisions now on appeal) do not at all reflect a unanimous judicial reaction: For example, two recent District Court decisions, Dameron Physicians Med. Group v. Shalala, 961 F.Supp. 1326 (N.D.Cal.1997) and Kulkarni v. Leean, No. 96 C 884-S, 1997 WL 527674 (W.D. Wis. June 23), have joined other lower court decisions going the other way. See also the discussion of the problem at 66 U.S.L.W. 2233 (Oct. 21, 1997)
 
 
 [5]
 Those cited sections of the Social Security Act respectively correspond to Sections 1396a(n) and 1396d in the Title 42 usage employed in this opinion. Those sections are in fact the statutory provisions involved in these appeals
 
 
 [6]
 While titles of acts are not part of the law, they can be used to resolve ambiguity in a statute, so long as they do not contradict the actual text (see, e.g., INS v. National Ctr. for Immigrants' Rights, Inc., 502 U.S. 183, 189, 112 S.Ct. 551, 555-56, 116 L.Ed.2d 546 (1991) and cases cited there). In this instance the congressional title, rather than merely resolving an ambiguity, parallels the provision in Act § 4714(c) that specifically makes the statute applicable to pre-Act services involved in pending litigation