**Maurice McCREARY, M.D., et al., Plaintiffs,**

v.

**Paul OFFNER, Defendant,**

**United States of America, Defendant–Intervenor.**

**No. CIV. A. 97–1524 (PLF).**

United States District Court, District of Columbia.

March 31, 1998.

Allen V. Farber, James A. Barker, Jr., Green Stewart Farber & Anderson, PC, Washington, DC, for Plaintiff.

Paul Klein, Asst. Corporation Counsel for the District of Columbia, Brian G. Kennedy, U.S. Department of Justice, Washington, DC, for Defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

Former Chief Judge Ervin of the Fourth Circuit aptly described the unenviable circumstance each judge finds himself or herself in when faced with a case involving the interpretation of certain provisions of the Medicare and Medicaid statutes:

> There can be no doubt but that the statutes and provisions in question, involving the financing of Medicare and Medicaid, are among the most completely impenetrable texts within human experience. Indeed, one approaches them at the level of specificity herein demanded with dread, for not only are they dense reading of the most tortuous kind, but Congress also revisits the area frequently, generously cutting and pruning in the process and making any solid grasp of the matters addressed merely a passing phase.

*Rehabilitation Ass'n of Virginia v. Kozlowski,* 42 F.3d 1444, 1450 (4th Cir.1994). The case before this Court is no exception to this grim jurisprudential picture.

## I. BACKGROUND

This case is about doctors who have provided health care services to indigent elderly patients in the District of Columbia and their assertion that the District underpaid them for those services from 1990 to 1997. The District claims to have paid everything it was obligated to pay pursuant to its interpretation—and the interpretation of the United States Department of Health and Human Services—of the Medicare and Medicaid statues.

The Medicare Act, 42 U.S.C. §§ 1395–1395ccc, provides two types of federally funded insurance to people 65 years or older and certain disabled individuals: (1) coverage for inpatient services (Part A coverage), and (2) coverage for physician services, outpatient hospital services, durable medical equipment, and certain other services and supplies not covered under Part A (Part B coverage). All persons eligible for Medicare receive Part A coverage. To receive Part B coverage, however, a Medicare-eligible patient must pay insurance premiums. After the Part B beneficiary pays an annual deductible ($100.00), the federal government pays 80 percent of the Medicare-allowed charge amount for the services rendered. The Part B beneficiary must pay the remaining 20 percent, called a co-payment or co-insurance. This payment plan (the premiums, deductibles and co-payments) is called "Part B cost sharing."

The Medicaid Act, 42 U.S.C. §§ 1396–1396v, established a cooperative federal-state public assistance program (separate from Medicare) that provides federal financial assistance to states electing to provide medical services to certain low-income individuals through HHS-approved medical assistance programs. The District of Columbia has elected to participate in the Medicaid program, and its Medicaid plan has been approved by HHS.

Through matching funds, the federal government contributes between 50 and 83 percent of the funding for Medicaid, and participating states are responsible for the rest. Each state develops a schedule or methodolo-

gy that establishes the fee that the state will pay a service provider for every item or service covered under the state's Medicaid plan. Where Medicare and Medicaid cover the same services, the state Medicaid fee amount is almost always less than the reasonable charge for services that the federal government sets for Medicare reimbursement; it also is generally even less than the 80 percent of the reasonable charge figure that the federal government pays under Medicare's Part B plan. *See Rehabilitation Ass'n of Virginia v. Kozlowski,* 42 F.3d at 1447. Medicaid service providers must accept whatever Medicaid payment they receive as payment in full and, unlike Medic*are* service providers, may not ask Medicaid patients to pay any money beyond that amount.

Historically, the Medicare and Medicaid fields have established two different categories of people who qualify for Medicare, but who were too poor to pay for Part B cost sharing: QMBs and dual eligibles. A QMB or a "Qualified Medicare Beneficiary" is: (1) an individual who is qualified for Medicare, (2) not poor enough to qualify for Medicaid, and (3) too poor to pay for Part B cost sharing. A dual eligible is an individual who is eligible for benefits under both Medicare and Medicaid. Some dual eligibles are not able to afford the required insurance premiums under Part B of Medicare. In 1988, Congress eliminated the distinction between dual eligibles and QMBs. Individuals who cannot afford to pay for Part B Coverage (whether they are qualified for Medicaid or not) are now collectively referred to as QMBs.

The Medicaid Act requires that the plan of any participating state must provide "for making medical assistance available for Medicare cost sharing ... for qualified Medi-

care beneficiaries ...." 42 U.S.C. § 1396a(a)(10)(E). This subsection of the Medicaid Act, however, never addressed the exact *amount* that states must pay toward Medicare cost sharing. A different subsection addressed the topic of payment amounts in the following manner:

> In the case of medical assistance furnished under this subchapter for medicare cost-sharing respecting the furnishing of a service or item to a [QMB], the State plan *may provide payment* in an amount with respect to the service or item that results in the sum of such payment amount and any amount of payment made under [Medicare] with respect to the service or item exceeding the amount that is otherwise payable under the State plan for the item or service for eligible individuals who are not [QMBs].

42 U.S.C. § 1396a(n) (emphasis added). The historical interpretation of this subsection is at the heart of this case. Defendant maintains that the language of Section 1396a(n) ("the State plan may provide payment") means that the District has never been obligated to pay any amount for health care services provided to QMBs that exceeds the Medicaid fee amount. Plaintiffs argue that despite the apparent permissiveness of the language of this section, states have been obligated to pay the full cost sharing amount, even if that amount exceeds the Medicaid fee amount, because health care providers are entitled to full payment (based on the higher Medicare fee amount) for the services rendered for QMBs.[1]

From 1992 to 1994, four circuit courts agreed with plaintiffs' interpretation of Section 1396a(n) by rejecting policies like the District's that limited or capped payments of Medicare Part B cost sharing for QMBs. *See*

---

**1.** The court in *Paramount Health Systems, Inc. v. Wright,* 138 F.3d 706 (7th Cir.1998), provides a good example of the tug-of-war being played out between Medicaid-participating states and health care providers:

> Suppose that for the same service the Medicare-approved rate is $100 and the Medicaid-approved rate only $70. [The health care provider] claims that when it renders the service to a [QMB], it is entitled to be reimbursed $80 by the federal government (which is conceded) and (what is contested) $20 by the state (of

which the actual cost to the state would be at most $10, since the federal government pays at least half). Otherwise [the health care provider] will be rendering for only $80 a service to a Medicare beneficiary for which Medicare entitles it to $100. The government counters that the proper payment is $70, the Medicaid rate, and that since Health and Human Services is reimbursing the provider $80, the state need give the provider nothing; the provider is already being overpaid, since $80 is larger than $70.

*New York City Health and Hospitals Corp. v. Perales*, 954 F.2d 854, 857 (2d Cir.1992) ("[P]roviders who furnish medical care to Medicare-eligible patients have the right to collect 100% of their reasonable costs or charges."); *Pennsylvania Medical Soc'y v. Snider*, 29 F.3d 886, 892 (3d Cir.1994) ("Congress required the states opting to cover QMBs to stand in the shoes of QMBs with respect to the Part B cost-sharing payments.... Accordingly, Medicare Part B service providers who supply service to QMBs are entitled to recover 100% of the reasonable costs and charges."); *Rehabilitation Ass'n of Virginia, Inc. v. Kozlowski*, 42 F.3d 1444, 1459 (4th Cir.1994) ("[T]here can be no doubt but that the QMB is a Medicare enrollee, and that payment on her behalf must be made at the Medicare rate."); *Haynes Ambulance Service, Inc. v. Alabama*, 36 F.3d 1074, 1077 (11th Cir.1994) ("[T]he [Medicaid] statute requires the state to pay the Medicare cost-sharing amounts at issue without limitation to the Medicaid rate.").

On August 5, 1997, however, Congress enacted the Balanced Budget Act of 1997. It included a section entitled "Clarification Regarding State Liability for Medicare Cost–Sharing." This section, Section 4714 of the Balanced Budget Act, provides that a state is *not* required to make any payment for Medicare deductibles, coinsurance or copayments for QMBs if that payment exceeds a state's set Medicaid fee amount. *See* Balanced Budget Act of 1997, § 4714(a)(2), Pub.L. 105–33, 111 Stat.251. It provides that a QMB shall not have any legal liability for payment to a provider, and that the amount of payment made by Medicare and a state (if any) is to be considered payment in full. *See* Balanced

Budget Act of 1997, § 4714(a)(3). The Act also provides a far-reaching effective date for its limitation on state liability:

> The amendments made by this section shall apply to payment for ... items and services furnished on or after the date of the enactment of this Act [August 5, 1997]. *The amendments made by subsection (a) shall also apply to payment by a State for items and services furnished before such date if such payment is the subject of a law suit that is based on [the sections of the Medicare and Medicaid Acts that define "Medicare cost-sharing"] and that is pending as of, or is initiated after, the date of the enactment of this Act.*

Balanced Budget Act of 1997, § 4714(c) (emphasis added).

Plaintiffs, who provide Medicare Part B services to QMBs, claim that since 1990 and until the enactment of the August 1997 Balanced Budget Act, the District violated the Medicare and Medicaid Acts, 42 U.S.C. § 1395 *et seq.*, 42 U.S.C. § 1396 *et seq.*, by unlawfully limiting the District's "cost sharing" obligations for health care services to QMBs.[2] Since 1990, the District has, according to its own policy, limited its QMB-related payments to the amount of money it is obligated to pay under Medicaid. Therefore, doctors providing health care services to QMBs in the District generally have been reimbursed for only 80 percent of their charges, the District never paying the remaining 20 percent that the QMBs were too poor to pay.[3]

For the purposes of this case, plaintiffs concede that Section 4714 of the 1997 Balanced Budget Act authorizes the District to limit its cost sharing obligations from now on,

---

**2.** One of the plaintiffs, the Medical Society of the District of Columbia ("MSDC"), is a non-profit corporation with approximately 2,000 members who are doctors and medical students. MSDC represents about one-third of all licensed physicians engaged in the private practice of medicine in the District of Columbia. MSDC alleges that many of its members regularly provide medical care and services to QMBs who are covered by Part B of the federal Medicare program. The individual plaintiffs, Drs. McCreary and Righini, both practice medicine in the District and provide services to QMBs.

**3.** Since 1990, the District Medicaid plan has provided:

> In any case in which the Medicaid recipient has Medicaid and any other insurance (including Medicare), the D.C. Medicaid Program will pay the deductible and copayment on a claim only when the claim amount does not exceed Medicaid payment rate for that service.

29 D.C.M.R. § 947.1. Prior to 1990, the District used to pay health care providers the full amount of the applicable Medicare Part B deductible and coinsurance for QMBs. Pls.' Mem. in Support of Mot. for Partial Summary Judgment at 14.

but claim that the District was *not* authorized to limit such payments before the 1997 Act was passed. Plaintiffs now seek the money that the District allegedly should have paid them for seven years. They bring claims for breach of contract (Count I), unjust enrichment (Count IV) and promissory estoppel (Count V). Anticipating that the District would rely on the provision of the Balanced Budget Act that permits it to cap its cost-sharing payments retroactively, plaintiffs have also included a takings claim (Count II) and a violation of due process claim (Count III) in their complaint, and request the Court to declare the retroactive effective date of Section 4714 of the Balanced Budget Act unconstitutional.

The matters currently before the Court are plaintiffs' motion for partial summary judgment and defendants' cross-motion for summary judgment. The United States, as intervenor, has filed a memorandum in support of the constitutionality of Section 4714 of the Balanced Budget Act.

## II. DISCUSSION

In determining the constitutionality of Section 4714, the Court must decide whether it is a "clarification" or an "amendment" to the Medicaid Act. If the law was "settled" prior to August 5, 1997, Section 4714 was an "amendment" and its retroactive application would have serious constitutional problems; if the intended meaning of the law was ambiguous, however, Section 4714 was merely a "clarification" and does not have an impermissible retroactive effect. In deciding this same issue, the Ninth Circuit noted:

[A] key threshold issue is whether the enactment was truly a "clarification" of the prior statute (as Congress said), or was instead a substantial change in the law. If Act § 4714 were to be characterized in the latter fashion, its retroactive application would pose a series of potential constitutional problems. If however Act § 4714 merely clarifies what Section 1396a(n) was originally intended to mean, then the Medicaid Act never required states ... to pay cost-sharing in full. In that event the only function of Act § 4714 in this situation is to state more clearly what the law already

was—it has no retroactive effect that might be called into constitutional question.

*Beverly Community Hospital Ass'n v. Belshe*, 132 F.3d 1259, 1265 (9th Cir.1997).

The court in *Beverly* acknowledged that prior to the enactment of the Balanced Budget Act, four circuits had held that the Medicaid Act requires states to pay for the cost sharing of QMBs. It also emphasized, however, that the circuits could not even agree on a single construction of Section 1396a(n): "Section 1396a(n) is a superb example of the baffling nature of the statute. It has shown itself to be particularly resistant to a single simple interpretation, and hence particularly in need of clarification." *Beverly Community Hospital Ass'n v. Belshe*, 132 F.3d at 1266. The court concluded:

[H]ere Congress has formally declared Act § 4714 to be a clarification of Section 1396a(n) .... Act § 4714 [therefore] is entitled to great weight in construing the meaning of Section 1396a(n).

\* \* \* \* \* \*

Given the extraordinary difficulty that the courts have found in divining the intent of the original Congress, a decision by the current Congress to intervene by expressly clarifying the meaning of Section 1396a(n) is worthy of real deference. Appellees' arguments that Act § 4714 is new law, despite Congress' unambiguous title for that section, cannot override that deference, because those arguments incorrectly presume a clearly established meaning for Section 1396a(n)—something that simply did not exist before Act § 4714 was adopted.

*Beverly Community Hospital Ass'n v. Belshe*, 132 F.3d at 1265–66.

When faced with the same issue, Judge Posner of the Seventh Circuit took a different tack, but, reluctantly, reached the same conclusion:

There is an air of unreality in treating section 4714(a) as an attempted clarification of original statutory meaning, although it is captioned "Clarification Regarding State Liability for Medicare Cost-Sharing." The disputed [QMB] provisions

date from 1986 ...—eleven years before the Balanced Budget Act was passed. The membership of Congress had largely turned over during the interim and surely few member of the 105th Congress who had been members of Congress back in 1986 remembered what the membership's intentions had been regarding the esoteric issue of the reimbursement rate for providers of medical services to [QMBs]. In any event, Congress is not an interpretive body and has no felt duty to maintain continuity with the past. "The views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." The location of the 1997 amendments in a statute labeled the "Balanced Budget Act" and concerned primarily with cutting the federal deficit hardly creates confidence that Congress was, court-like, interpreting the 1986 statute. It is far more realistic to regard the 1997 [QMB] provisions as designed to change the original statute in order to reduce the cost of Medicaid to the federal government. Nothing in the provisions themselves suggests a process of interpretation; they merely declare that the states are not required to reimburse [QMB] providers at the Medicare rate.

*Paramount Health Systems, Inc. v. Wright,* 138 F.3d 706, 709–10 (7th Cir.1998) (internal citations omitted).

Despite its skepticism, the Seventh Circuit in *Paramount Health Systems* ultimately felt obliged to give weight to Congress' labeling of Section 4714 as a clarification—both because of *Chevron*'s second step admonition to give deference to the Secretary when a statute is ambiguous, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and because of the Supreme Court's instruction in *Loving v. United States,* 517 U.S. 748, 768–70, 116 S.Ct. 1737, 1749, 135 L.Ed.2d 36 (1996), that subsequent legislation "declaring the intent of an

earlier statue is entitled to great weight in statutory construction." *Paramount Health Systems, Inc. v. Wright,* 138 F.3d 706, 710. The court in *Paramount Health Systems* felt

> constrained by *Loving* to give *some* weight to Congress's declaration in the Balanced Budget Act that providers of services to [QMBs] are not entitled to reimbursement at full Medicare rates. Although we don't know how much weight to give it—probably rather little in the circumstances—it is enough to tip the balance in favor of *Chevron* deference. The Act is a hopeless muddle so far as [QMB] reimbursement is concerned, and while it seems to us that [the health care providers have] the better interpretation, there is sufficient ambiguity to require us to defer to the government.

*Paramount Health Systems, Inc. v. Wright,* 138 F.3d 706, 711.

Whether one scrutinizes the clarifying claims of Section 4714 with a harsher gaze or not, one thing is clear: the law regarding state liability to pay for the health services provided to QMBs has never been crystal clear. Section 4714 has certainly provided clarification where it was needed. For this reason, the Court concludes that applying Section 4714 retroactively, as Congress directed, is not impermissible under the Constitution. Defendant's motion for summary judgment therefore shall be granted and plaintiff's motion for partial summary judgment denied. An Order and Judgment consistent with this Opinion shall be issued this same day.[4]

SO ORDERED.

*ORDER AND JUDGMENT*

Upon consideration of plaintiff's motion for partial summary judgment, defendant's motion for summary judgment, the memoranda in support thereof, the memorandum filed by the United States, as intervenor, in support of the constitutionality of Section 4714 of the

---

4. The Court has considered plaintiffs' supplemental brief regarding the purported separation of powers issues raised by Section 4714 and considers plaintiffs' arguments misplaced. Plaintiffs argue that, pursuant to *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871), Section 4714 violates the doctrine of sep-

aration of powers because it effects decisions in pending cases. The legal issues that arose in *United States v. Klein* and its progeny, however, are simply not the same issues raised in this case, a case concerning the clarification of a confusing statute.

38

Balanced Budget Act of 1997, oppositions and replies, and the supplemental memoranda filed by the parties, it is hereby

ORDERED that defendant Offner's Motion for Summary Judgment is GRANTED; it is

FURTHER ORDERED that plaintiffs' Motion for Partial Summary Judgment is DENIED; it is

FURTHER ORDERED that JUDGMENT is entered for defendant Offner; and it is

FURTHER ORDERED that the Clerk of the Court shall remove this case from the Court's docket.

SO ORDERED.