**In re Stephen Raymond STRAND; Kristie Gale Strand, Debtors,**

**Bruce Leichty, Appellant,**

**v.**

**William T. Neary, United States Trustee, Appellee.**

No. 03–15431.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 2004.

Filed July 9, 2004.

Bruce Leichty, pro se, Clovis, CA, real-party-in-interest/appellant.

Jeffrey J. Lodge, United States Department of Justice, Office of the United States Trustee, for the trustee/appellee.

Before: B. FLETCHER, TROTT, and FISHER, Circuit Judges.

TROTT, Circuit Judge.

Bruce Leichty ("Leichty"), in his capacity as counsel for a Chapter 7 trustee, appeals the bankruptcy court's order, which, pursuant to 11 U.S.C. § 330, awarded only half of the compensation he requested in his final fee application. The bankruptcy court did not award the full amount requested because it concluded that Leichty pursued litigation that was not reasonable or necessary in its entirety. We hold that the bankruptcy court did not abuse its discretion in making this determination.

## BACKGROUND

On June 13, 1997, Stephen and Kristie Strand ("the Strands") voluntarily filed for Chapter 7 bankruptcy. Robert Hawkins ("the Trustee") was then appointed Chapter 7 trustee pursuant to 11 U.S.C. § 701(a)(1). On December 18, 1997, the Trustee filed an application, and received approval, to employ Leichty to represent him in the bankruptcy matter. Leichty proceeded to file three adversary proceedings in an attempt to recover assets for the estate. This appeal involves only the lawsuit he filed against the Internal Revenue Service ("the IRS").

The IRS litigation was prompted by the IRS's attempt to offset $28,459 in overpayments by the Strands against an assessed penalty in the amount of $40,620.02. The Trustee, with Leichty's assistance, challenged the offset on the basis that 1) it violated the automatic stay provision of the Bankruptcy Code; and 2) there was no mutuality of debt, in that the unpaid penalty was the penalty of the husband only and not of both debtors. The bankruptcy court entered summary judgment in favor of the IRS, holding that even though the IRS technically violated the automatic stay provision, "there would be no purpose served by requiring the IRS to reverse the setoff and return the money to the estate, only to later permit the IRS to claim the very same money in a subsequent setoff which would be approved by the Bankruptcy Court." During the pendency of the IRS litigation, Leichty filed an application for the interim payment of fees and expenses, pursuant to 11 U.S.C. § 331. The bankruptcy court approved the application in the amount of $22,012.50, but authorized payment as to only $16,510. Near the conclusion of the Strand matter, Leichty filed an application for the payment of final fees and expenses under § 330. The application included a request for $12,445, in addition to the $22,012 in fees requested in the interim application. This brought the total fee request to $34,457, of which $19,065 was attributable to the IRS litigation.

The United States Trustee ("UST") filed a formal objection to Leichty's final application, asserting that, based on the factors set forth in *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 957–58 (9th Cir.1991), Leichty had failed to use proper billing judgment with respect to the IRS litigation. The UST suggested that a reasonable fee for the IRS litigation would have been $7,350. Although the bankruptcy court agreed with the UST that Leichty exercised poor judgment in aggressively pursuing the IRS litigation, it determined that such a dramatic cut in fees was not warranted. The bankruptcy court awarded Leichty $9,532.50 for his efforts in the IRS litigation, exactly half the requested amount. Leichty appeals this award of less than the full amount requested.

## DISCUSSION

### Standard of Review

■ "We review decisions of the bankruptcy court independently without deference to the district court's determinations." *Galam v. Carmel (In re Larry's Apt., L.L.C.)*, 249 F.3d 832, 836 (9th Cir. 2001) (citing *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 419 (9th Cir.1993)). "The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo." *Id.* "We will not disturb a bankruptcy court's award of attorneys' fees unless the bankruptcy court abused its discretion or erroneously applied the law." *Id.* (quoting *Kord Enters. II v. Cal. Commerce Bank (In re Kord Enters. II)*, 139 F.3d 684, 686 (9th Cir.1998)); *see also Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997).

## Modification of Interim Award

■ Although the final award did not require Leichty to return any of the $16,510 he had already been paid pursuant to the interim award, he argues that the approval of his application for $22,012.50 in interim fees created a vested interest akin to an account receivable. He contends that the bankruptcy court should not have permitted 'forfeiture' of this interest in fees approved but not yet received absent evidence of fraud, conflict of interest, or other misconduct usually found in cases where fees are required to be disgorged. The scope of the bankruptcy court's ability to revisit an interim award has never been squarely addressed by this circuit.

■ Section 331 provides that "any professional person employed under section 327 ... may apply to the court ... for such compensation for services rendered before the date of such an application ... as is provided under section 330 of this title." 11 U.S.C. § 331. The limited purpose of this statute is to provide financial relief to court-appointed officers engaged in protracted bankruptcy litigation, so that these officers do not have to wait for what may be years before receiving compensation. *See* H.R.Rep. No. 95–595 at 330 (1977); S.Rep. No. 95–989, at 41–42 (1978); *see also Cont'l Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1321 (5th Cir.1989) (citing 2 *Collier on Bankruptcy* ¶ 331.01 (15th ed.)); *In re Mansfield Tire & Rubber Co.*, 19 B.R. 125, 127 (Bankr. N.D.Ohio 1981) ("The essential purpose of 11 U.S.C. § 331 is, of course, to relieve counsel and others from the burden of 'financing' lengthy and complex efforts leading to the conclusion of bankruptcy proceedings....").

■ The relief afforded under § 331, however, in no way restricts the bankruptcy court's ability to craft a final award under § 330. "Because interim awards are interlocutory and often require future adjustments, they are '*always* subject to the court's reexamination and adjustment during the course of the case.' " *In re Evangeline Ref. Co.*, 890 F.2d at 1321 (quoting 2 *Collier on Bankruptcy* ¶ 331.03 (15th ed.)); *see also In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir.1995) ("[A]ll awards of interim compensation are tentative, hence reviewable—and revisable—at the end of the case."); *Callister v. Ingersoll Rand Fin. Corp. (In re Callister)*, 673 F.2d 305, 306 (10th Cir.1982) ("[Section 331] anticipates repeated application to the court for reimbursement and compensation, subjecting the award to amendment or modification at any time during the pendency of the bankruptcy proceedings.") Given the purpose of § 331 and the inherent nature of tentative financial relief, the bankruptcy court did not need to find any misconduct on the part of Leichty to justify modification of the interim award upon a final evaluation of the fee application. *In re Evangeline Ref. Co.*, 890 F.2d at 1322 ("Interim fee awards are not final determinations intended to put a matter to rest."). Therefore, the bankruptcy court did not abuse its discretion by reconsidering, in accordance with § 330, "the nature, the extent, and the value" of the IRS litigation in its entirety. 11 U.S.C. § 330(a)(3)(A).

## Final Compensation Award

Leichty argues that even if the review of the interim award was proper, the bankruptcy court's reduction of the IRS litigation fees in the course of drafting the final award was an abuse of discretion. We disagree.

### 1. *Fairness*

■ Leichty first argues that the bankruptcy court abused its discretion because

he was penalized for the IRS litigation decisions, whereas his client, the Chapter 7 trustee, was not. Despite his perceived unfairness of the award, Leichty is ultimately responsible for his own actions. As the Ninth Circuit Bankruptcy Appellate Panel stated in *Digesti & Peck v. Kitchen Factors, Inc. (In re Kitchen Factors, Inc.)*, "[i]f the trustee ... insists on pursuing collection efforts in a manner which is not cost-effective, then counsel should seek to withdraw or, at least, recommend that the client secure a second legal opinion." 143 B.R. 560, 563 (B.A.P. 9th Cir.1992) (citation omitted). Leichty, at the very least, acquiesced in the decision to pursue the IRS litigation. Although the record contains a declaration submitted by the Trustee in support of Leichty's application for fees, the declaration contains no indication that Leichty ever discussed with the Trustee the potential costs and risks of undertaking the litigation. Nor is there any other indication that the Trustee knew that the litigation could result in a net loss to the estate if Leichty's fees were more than the amount of recovery, but nonetheless instructed Leichty to proceed. Therefore, Leichty is responsible for his role in the litigation. The bankruptcy court's independent evaluation of both Leichty's and the Trustee's litigation related fees was not an abuse of discretion.

## 2. Application of State Law

■ Leichty also argues that the bankruptcy court abused its discretion by failing to consider the reasonableness of the IRS litigation in light of *Eistrat v. Humiston*, 160 Cal.App.2d 89, 324 P.2d 957 (App.1958). Leichty's self-proclaimed strongest argument in the underlying IRS litigation was that, under California law, there was a lack of mutuality of debt between the IRS and Stephen Strand as an individual, and the IRS and the Strands as a married couple. Leichty contends that *Eistrat* supports his lack of mutuality theory, and that it was an abuse of the bankruptcy court's discretion not to apply *Eistrat* when the court evaluated the reasonableness of the IRS litigation. Although the applicability of *Eistrat* should have been advanced on direct appeal of the original IRS litigation, rather than in this context, the bankruptcy court nonetheless acknowledged this "interesting and somewhat novel legal theory." However, the bankruptcy court ultimately concluded that even if the court had been persuaded by Leichty's theory, "given the benefit to be achieved (a modest distribution to another priority creditor whose claim was already nondischargeable), pursuing [the lack of mutuality] theory was not, in the court's view, reasonable or beneficial at the time the trustee was making these decisions."[1] The bankruptcy court's evaluation of the necessity and benefit of the IRS litigation, therefore, properly focused on the lack of a beneficial result regardless of the validity or success of Leichty's legal theory. Thus, it is immaterial in this case whether the bankruptcy court failed to apply applicable state law.

---

1. It is highly probable that the only beneficiary would have been the State of California. The IRS and the California Employment Development Department were overwhelmingly the two largest creditors, and their claims were priority claims under section 507 of the Bankruptcy Code. These two priority creditors were owed so much money, that it was inconceivable that enough money could have been brought back into the estate to satisfy the combined debt and have any money left over to satisfy the smaller, lower-priority, unsecured creditors. Further minimizing the potential benefit, the State's claim was nondischargeable and could have been pursued even after the conclusion of the Chapter 7 proceeding.

### 3. Potential Benefit

Leichty's final argument is that his IRS litigation decisions were supported by sound analysis and bankruptcy policy, and thus the bankruptcy court's characterization of the potential recovery as "modest" and the resulting cut in fees was an abuse of discretion. In determining a reasonable fee allowance, 11 U.S.C. § 330 clearly states that "the court shall not allow compensation for ... services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). As exemplified by the bankruptcy court, a determination of a reasonable fee allowance under § 330 is achieved by answering the following five questions:

> First, were the services authorized? Second, were the services necessary or beneficial to the administration of the estate at the time they were rendered? Third, are the services adequately documented? Fourth, are the fees requested reasonable, taking into consideration the factors set forth in § 330(a)(3)? Finally, [did] the professional exercise[ ] reasonable billing judgment[?]

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re MEDNET, MPC Corp.)*, 251 B.R. 103, 108 (B.A.P. 9th Cir.2000) (citation omitted). The bankruptcy court applied the correct standard, and thus we are left to examine whether the court abused its discretion in crafting the final award.

The bankruptcy court's characterization of the potential benefit of the IRS litigation as "modest" was a fair and proper assessment. If Leichty had prevailed in the IRS litigation, the most the estate could have recovered was $28,459, the amount of the attempted offset. Leichty's requested compensation relating to the IRS litigation was $19,065. This left just over $9,000 for the estate. The money would have then been redistributed between the IRS and the California Employment Development Department ("the EDD"), the only other priority creditor. The potential benefit to the estate was further minimized because the EDD's debt was nondischargeable in Chapter 7, and thus it could have pursued the debt even after the end of the Chapter 7 proceeding. Therefore, assuming the recovered money would have been split evenly between the IRS and the EDD, Leichty spent $19,065 for the potential benefit to the estate of recovering approximately $4,500 in nondischargeable debt for the EDD.

Leichty asserts, however, that this computation is inaccurate because it fails to include the possibility that his fees could have been recouped had he been successful in the litigation. Ordinarily, the bankruptcy court is required to award damages, including attorney's fees, for willful violation of the automatic stay, pursuant to 11 U.S.C. § 362(h). *California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1152 (9th Cir.1996). However, because § 362(h) applies only to individuals, and not legal entities such as the bankruptcy estate involved in this case, had Leichty prevailed, he would have been forced to rely on the broad provision of 11 U.S.C. § 105(a).[2] *Id.* This statute has been interpreted to permit bankruptcy courts, in their discretion, to award attorney's fees to the bankruptcy estate upon a showing that the automatic stay was willfully violated. *Id.* at 1152–53. If all the pieces had fallen into place, and Leichty

---

**2.** Section 105(a) provides that "[t]he [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

had prevailed in the underlying litigation, succeeded in convincing the court that a willful violation of the automatic stay provision had occurred, *and* succeeded in convincing the court to exercise its discretion to award fees, the estate would have recovered $28,459. However, as discussed above, the money would have been split between the two priority creditors, and thus the EDD would have been the only beneficiary of the IRS litigation.

Regardless of whether attorney's fees are factored into the equation, the bankruptcy court's conclusion regarding the degree to which the estate could benefit from the IRS litigation was reasonable. It is readily apparent that if the legal fees exceed the recovery, the estate is not benefitted. Even if the potential for recovering attorney's fees is included, incurring $19,065 in legal fees in exchange for the uncertain prospect of recovering $14,000 for a priority creditor holding a nondischargeable debt could reasonably be characterized as a "modest" benefit to the estate.

Leichty also suggests that his responsibility to equalize the distribution to similarly situated creditors should have been recognized as a benefit to the estate regardless of whether the recovery was "modest." What Leichty fails to appreciate, however, is that the bankruptcy court did recognize that the IRS litigation had some potential benefit to the estate. Although the UST recommended that the requested fees be cut by $11,715, the court exercised its discretion and determined that the compensation for the IRS litigation should be reduced only by one-half (i.e.$9,532.50). The bankruptcy court could have adopted the UST's recommendation, or even denied the IRS-related fees in their entirety. Considering that the IRS litigation fees were cut in half, rather than completely denied, the bankruptcy

court did not abuse its discretion in deciding that although the litigation may have had some merit, the degree to which it was pursued was unnecessary.

**AFFIRMED.**