NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>JIM SLEMONS HAWAII, INC.,<br><br>         Debtor.<br>_____ | BAP No. HI-10-1284-JuPaD<br>BAP No. HI-10-1403-JuPaD<br>BAP No. HI-10-1404-JuPaD<br>BAP No. HI-10-1405-JuPaD[*]<br>(related appeals) |
| JIM SLEMONS HAWAII, INC.;<br>ANTHONY P. LOCRICCHIO,<br><br>         Appellants,<br><br>v.<br><br>OFFICE OF THE UNITED STATES<br>TRUSTEE; CONTINENTAL<br>INVESTMENT COMPANY, LTD.,<br><br>         Appellees.<br>_____ | Bk. No. 09-01802<br><br><br><br>M E M O R A N D U M[**] |

Argued and Submitted by Video Conference on September 22, 2011
at Pasadena, California

Filed - October 12, 2011

Appeal from the United States Bankruptcy Court
for the District of Hawaii

---

[*] While not formally consolidated, these four related appeals were heard at the same time and were considered together. This single disposition applies to the four appeals, and the clerk is directed to file a copy of this disposition in each appeal.

[**] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Honorable Robert J. Faris, Chief Bankruptcy Judge, Presiding[***]
Honorable Lloyd King, Recalled Bankruptcy Judge, Presiding[****]

_____

Appearances:    Anthony P. Locricchio, Esq. argued for Appellant Jim Slemons Hawaii, Inc. and himself pro se; Noah M. Schottenstein, Esq. argued for Appellee Office of the United States Trustee; and Jerrold K. Guben, Esq., of O'Connor, Playdon & Guben LLP, argued for Appellee Continental Investment Company, Ltd.

_____

Before:  JURY, DUNN, and PAPPAS, Bankruptcy Judges.

Appellant, chapter 11[1] debtor Jim Slemons Hawaii, Inc., appeals from five orders entered by the bankruptcy court:

(1) Order Denying Debtor's Motion To Disqualify Bankruptcy Judge (BAP No. 10-1284);

(2) Order Regarding Motion To Set Aside Judgment Re: Termination Of Non-Residential Lease (BAP No. 10-1403);

(3) Order Regarding Motion to Pay § 365(d)(3) Administrative Expense and Request For Payment of Sublessee Rents (BAP No. 10-1404);

(4) Order Regarding Motion To Pay Only Certain Rent Payments And to Have Credited $85,000 Plus Interest And Penalties Against Rent Payments For Remainder Of August And All

_____

[***] Judge Faris entered all the orders on appeal except for the Order Denying Debtor's Motion To Disqualify Bankruptcy Judge (BAP No. 10-1284).

[****] Judge King entered the Order Denying Debtor's Motion To Disqualify Bankruptcy Judge (BAP No. 10-1284).

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

Of September And To Set Evidentiary Hearing And Permit Discovery Sworn Depositions On This Matter (BAP No. 10-1405); and

(5) Order Dismissing Case (BAP No. 10-1284).

Appellant, Anthony P. Locricchio ("Locricchio"), debtor's bankruptcy counsel, appeals the Order Denying Application for Professional Compensation By Debtor's Counsel (BAP No. 1284).

For the reasons stated, we AFFIRM each of these orders.

## I. FACTS

On March 21, 1983, Slemons Enterprises, Inc. ("SEI"), as lessee, and appellee, Continental Investment Company, Ltd. ("CIC"), as lessor, entered into a lease for three parcels of real property located on Kamehameha Highway, Aiea, Hawaii. In 1992, SEI assigned the lease to debtor. Debtor and CIC entered into a second lease dated April 15, 1993, for two additional parcels of real property also located on Kamehameha Highway (hereinafter, we refer to the 1983 lease and the 1993 lease as the "Lease").

Debtor's monthly lease payments to CIC were $61,300. To meet its obligation, debtor subleased the property to Tony Hawaii Corp. ("Tony Honda") for $42,632 per month and Car Stereo, Inc. ("Car Stereo") for $10,000 per month, with the remaining subleases to other parties to make up the difference. Debtor did not conduct any business on the leased property.

At some point, a portion of the leased property became subject to an eminent domain proceeding by the City of Honolulu for the development of a fixed rail system. Debtor evidently concluded that the portion of the leased property that was not subject to the eminent domain proceeding was extremely valuable

-3-

because it could be used for parking and passenger services.

The record indicates that debtor's relationships with Tony Honda, Car Stereo, and CIC were strained prior to debtor's bankruptcy filing. Debtor alleged that CIC wrongfully collected rental payments directly from Tony Honda. Debtor further alleged that CIC was engaged in conspiracy with Tony Honda and Car Stereo to oust it from the property. According to debtor, CIC's motivation as lead conspirator was to obtain the condemnation funds for itself and develop the property for a parking and passenger services area for the nine years remaining on debtor's Lease.[2]

In March 2009, debtor defaulted on the Lease.

**Bankruptcy Events**

On August 10, 2009, debtor filed a chapter 11 bankruptcy case to prevent eviction by CIC. Debtor's petition described its business as a single real estate lease that it subleased and showed Jim Slemons as debtor's 100% owner. Debtor's schedules showed that the Lease was the main asset of the bankruptcy estate, with debtor's only source of income from its subtenants. In Schedule B, Debtor listed a condemnation claim against the City of Honolulu in the estimated amount of $750,000. The schedules further showed that debtor had no secured creditors and three unsecured creditors, one of which was CIC listed with a disputed claim of $225,000.

Under § 365(d)(4)(A) and (B), the deadline for debtor to

_____

[2] We describe the disputes between the parties in further detail below.

-4-

assume the Lease or move for an extension of time to assume was December 8, 2009. The record reveals that Locricchio's failure to abide by these statutory directives led to the rejection of the Lease and the eventual dismissal of debtor's case.

**A.    Locricchio's Employment**

On September 28, 2009, appellant Locricchio filed his application to be employed as debtor's attorney. The United States Trustee ("UST") objected on the grounds that Locricchio failed to make the appropriate disclosures under § 329(a) and Rule 2016(b). The UST also questioned Locricchio's experience in the chapter 11 arena due to a number of administrative issues that arose soon after the filing of the case.[3]

On October 19, 2009, the bankruptcy court heard the matter and tentatively approved Locricchio's employment conditioned on his providing the necessary disclosures. The court also expressed its view that Locricchio and debtor should consider associating with an attorney who had chapter 11 experience.[4]

One day later, Locricchio provided the necessary disclosures. On January 1, 2010, the court entered the order approving his employment.

///

---

[3] Among other things, the UST complained that debtor had not filed a Statement of Financial Affairs, had not opened a proper debtor-in-possession bank account, did not have a Federal Tax Identification number, did not have a General Excise Tax license, had not filed a designation of responsible person, and had not filed an operating report for August 2009.

[4] Locricchio represented at the hearing on these appeals that he specialized in eminent domain proceedings.

-5-

**B.    CIC's Motion For Timely Payment of Post-Petition Rent**

On August 25, 2009, CIC moved for the timely payment of postpetition rent under § 365(d)(3).

On October 7, 2009, CIC filed a supplemental pleading in support of its motion to address debtor's statement in its August 2009 operating report that CIC had wrongfully taken the June and July 2009 rental checks from Tony Honda.  CIC maintained that Tony Honda's rental payments directly to CIC were consistent with an agreement in effect since October 21, 1998.

CIC's supplemental pleading also revealed that prior to debtor's bankruptcy filing, on July 7, 2009, Locricchio wrote to Tony Honda's counsel, Ms. Sugimura, directing that Tony Honda make its rental payments to debtor rather than to CIC. Locricchio also stated that debtor would have the bankruptcy court make a determination whether Tony Honda's conduct caused debtor economic harm.[5]  In response to the letter, Tony Honda evidently paid its August 2009 rent to debtor.

CIC also stated that it paid the real property taxes for July 1, 2009 to December 31, 2009, even though debtor was required to make those payments under the Lease.  Finally, CIC stated that it credited all amounts received, whether from Tony Honda or debtor, to debtor's account and attached the supporting documentation.

On October 8, 2009, debtor opposed CIC's motion.  Debtor's

---

[5] This statement was made more than a month before the bankruptcy case was filed.

opposition was based on CIC's alleged lack of standing to bring the motion because the motion and memorandum in support occasionally referred to CIC as Consolidated Investment Company, Ltd. rather than Continental Investment Company, Ltd. Debtor made no other arguments in opposition.

On October 9, 2009, CIC filed a second supplement to its motion further clarifying that the payments made by Tony Honda to CIC were authorized by the October 21, 1998 letter agreement. CIC also attached accounting records for May, June and July 2009 and renewed its request for an order requiring debtor to pay postpetition rent as it became due.

On the morning of October 19, 2009 — the day of the hearing on CIC's motion — debtor filed a pleading labeled as a motion without notice of a hearing date. In the motion, debtor sought to (1) obtain a $85,000 credit against rent payments due CIC for the remainder of August and all of September; (2) pay the October rent; and (3) set an evidentiary hearing for the resolution of various disputes (hereinafter, the "Rent Offset Motion"). The factual basis for the offset of postpetition rent was CIC's alleged conspiracy with Tony Honda to deprive debtor of sublease funds and CIC's attempt to force debtor out of bankruptcy so that CIC could use the property to profit for itself.

Debtor described its dispute with Car Stereo, which had defaulted on its rent payments postpetition. Debtor contended that Car Stereo refused to pay its rent because of an "alleged fraudulent agreement" where debtor had orally agreed to pay 75% of Car Stereo's electric bill. Debtor asserted that no such

-7-

agreement ever existed.  Debtor also alleged that the owners of Car Stereo fraudulently altered the sublease document between debtor and itself to extend the term of lease at the same rent. Because Car Stereo and Tony Honda were represented by Ms. Sugimura, debtor implied in its motion that Car Stereo was also part of the conspiracy with Tony Honda and CIC to oust debtor from the property.

The Rent Offset Motion also described other disputes between debtor and Tony Honda.  Debtor alleged that Tony Honda had subleased the property without debtor's permission and had kept the rental payments for itself.  Further, to add to debtor's troubles, Tony Honda had informed debtor that it would not pay debtor rent beginning with the October 2009 payment. Tony Honda's reason for withholding rent was due to debtor's alleged failure to abide by an agreement which required debtor to complete some environmental remediation work on the property leased to Tony Honda.  Debtor maintained that it had already paid for that work.

In the end, debtor's thirty-six page motion sought an offset of rent of $85,000 for the months of August and September 2009 due to CIC's wrongful collection of prepetition rents from Tony Honda in June and July 2009 and an undisclosed amount of damages due to the alleged wrongful conduct of its subtenants and CIC.

At the October 19, 2009 hearing, the bankruptcy court stated that it had not read debtor's papers that were filed that morning because they were untimely.  The court further explained that it would address whether the August and September rents had

-8-

to be paid when the Rent Offset Motion came on for hearing. The court also summarily rejected debtor's opposition based on the "typo" in the name of CIC in its pleadings. Finally, the court granted CIC's motion, but opined that it was unclear what the consequences would be if debtor did not comply with § 365(d)(3).

After some discussion with CIC's counsel about possible consequences, the court observed that the nonpayment of rent could be a factor in considering whether to grant debtor an extension of time to assume the Lease or if CIC sought to lift the stay.[6] However, the court concluded by stating that these issues would be left for "another day." Hr'g Tr. (October 19, 2009) at 17:1-4.

The court entered the order granting CIC's motion on November 9, 2009. The order clearly stated that debtor was required to pay the monthly rent or prorated monthly rent for the postpetition period from the petition date; it did not relieve debtor from paying August or September rent. Although the order was inconsistent with the court's statements at the hearing that it would leave the issue of offset for "another day," debtor did not appeal the November 9, 2009 order and it became a final order in the case.

On November 22, 2009, debtor tendered $80,300 to CIC for postpetition rent and other obligations. Because CIC had

_____

[6] As described below, debtor construes the court's comments as a "threat" that it would deny debtor any extension of time to assume the Lease if it was not current on postpetition rent. Throughout its briefs, debtor uses this alleged "threat" to show the bankruptcy judge's bias and prejudice against it and to explain why debtor never filed a motion for an extension of time (because it would have been denied).

-9-

calculated the postpetition amount due as $347,606.27, CIC returned the check to debtor on December 3, 2009, contending that debtor's payment did not comply with the bankruptcy court's November 9, 2009 order and that debtor was now in default. It was at this point that Locricchio contends he first learned about the contents of the November 9, 2009 order, which he claims was fraudulently submitted and obtained by CIC's counsel.

**C.   CIC's Motion To Terminate The Lease**

The December 8, 2009, deadline for assuming the Lease came and went without debtor filing a motion to assume the Lease. § 365(d)(4)(A). Moreover, debtor did not move to extend the time to assume the Lease under § 365(d)(4)(B) within the 120-day period. As a result, on December 23, 2009, CIC filed a motion seeking (1) a declaration from the bankruptcy court that the Lease was terminated and (2) an order directing debtor to surrender the premises (the "Lease Termination Motion").

On January 8, 2010, debtor filed an opposition, contending, among other things, that its Rent Offset Motion barred CIC from seeking to terminate the Lease until the court ruled on the various disputes. Debtor further asserted that its Rent Offset Motion made clear that it had assumed the unexpired Lease under § 365(d)(4). Finally, debtor maintained that once CIC filed its motion seeking timely payment of the postpetition rent, it was barred from claiming that debtor had not assumed the Lease.

At the January 19, 2010 hearing, the court took the matter under advisement due to debtor's complaint that CIC gave debtor twenty-seven days notice instead of twenty-eight days. The court gave debtor until February 11, 2010, to file a

-10-

supplemental memorandum and CIC's counsel was given to February 18, 2010, to file a reply.[7] Debtor requested a further extension to February 18, 2010, which the bankruptcy court granted, and the time for CIC's reply was extended to February 25, 2010.

In debtor's supplemental pleading filed on February 18, 2010, debtor accused the bankruptcy judge of being biased and stated that it would be filing a motion to disqualify him.

On February 22, 2010, before the filing of CIC's reply, the bankruptcy court issued a Memorandum Decision, finding that the Lease was rejected on December 9, 2009, by operation of law under § 365(d)(4). Citing Sea Harvest Corp. v. Riviera Land Co., 868 F.2d 1077 (9th Cir. 1989), the bankruptcy court rejected debtor's argument that its Rent Offset Motion constituted a properly noticed and timely motion to assume the Lease. The court also observed that a debtor must pay postpetition rent under § 365(d)(3) even if it later decided to reject the lease. Finally, because debtor had mentioned in its papers that it intended to file a motion for recusal, the bankruptcy judge addressed the issue in the Memorandum Decision, concluding there was no basis for his disqualification.

The court entered judgment for CIC on March 3, 2010 (the "Termination Judgment").

---

[7] CIC filed its motion on December 23, 2009, and the hearing was set for January 19, 2010. Because the motion was filed during the holiday season and Locricchio did not participate in the court's non-mandatory electronic filing system which provides immediate notice, the court gave debtor additional time.

-11-

**D. Debtor's Recusal Motion**

On February 23, 2010 — one day after the court issued its Memorandum Decision terminating debtor's Lease — debtor filed a motion to disqualify Bankruptcy Judge Robert Faris (the "Recusal Motion"). Debtor alleged that the judge overlooked CIC's procedural irregularities and considered pleadings it should have stricken. Specifically, debtor asserted that the court should have stricken CIC's Lease Termination Motion because of the insufficient notice (twenty-seven days instead of twenty-eight). Debtor also alleged that CIC's counsel was part of a "bankruptcy club," which was a social luncheon gathering of bankruptcy attorneys that the bankruptcy judge regularly attended, and which excluded some attorneys from attending. Finally, debtor alleged that the court rushed out its February 22 memorandum on CIC's Lease Termination Motion due to the possible delay caused by debtor's notice of its yet-to-be-filed Recusal Motion.

Debtor's motion was set for hearing on April 26, 2010, before recalled Bankruptcy Judge Lloyd King.[8] On April 7, 2010, debtor filed an ex parte motion to stay the hearing so that it could conduct an investigation into the court's internal procedures. The investigation would supposedly uncover whether Judge Faris had improperly back-dated his Memorandum Decision

---

[8] A federal judge who is the subject of a recusal motion may hear that motion himself. United States v. Sibla, 624 F.2d 864, 867-68 (9th Cir. 1980). To avoid any appearance of conflict or bias, some districts or divisions use a procedure that had a different judge rule on a recusal motion. The District of Hawaii used this optional procedure.

from February 24 to February 22 due to debtor's pending Recusal Motion. Judge King denied debtor's ex parte motion by Memorandum Decision and an order entered April 9, 2010.

At the April 26, 2010 hearing, Judge King denied debtor's Recusal Motion.

On May 5, 2010, Judge King issued a Memorandum Decision, finding that (1) Locricchio had not offered any evidence that if luncheon meetings were held and Judge Faris participated, the attendees precluded him, or any other attorney, from attending; (2) although debtor had insufficient notice of CIC's motion to terminate the Lease, the notice deficiency resulted in no prejudice to debtor because Judge Faris gave debtor the opportunity to file a supplemental pleading; (3) debtor failed to cite any case law that would require a court to deny a motion (versus continuing it) due to insufficient notice; and (4) Judge Faris did not err by issuing his Memorandum Decision granting CIC's motion to terminate the Lease prior to the hearing on debtor's motion to disqualify him. Judge King concluded by stating that debtor's allegations of bias against Judge Faris lacked factual and legal support.[9]

The bankruptcy court entered the order denying debtor's Recusal Motion on May 5, 2010.

**E.    The May 24, 2010 Hearing On Various Motions**

Meanwhile, the parties to this appeal filed various motions.

---

[9] Judge King commented that debtor's original and supplemental memoranda in support of its Recusal Motion did not contain a single citation to a statute, rule, or reported case.

-13-

On February 4, 2010, Locricchio filed an application for interim fees, requesting $39,647.40 for his services (the "Fee Application"). On February 25, 2010, the UST objected to the Fee Application on the grounds that Locricchio failed to follow the UST's guidelines for fee applications or discuss any of the factors in § 330(a) to assist the court in determining the reasonableness of the fees. CIC also objected, arguing that its postpetition rent had administrative priority over debtor's counsel's fees.

On April 5, 2010, debtor moved to set aside the Termination Judgment under Rule 9023 (the "Set Aside Motion"). Debtor's motion essentially rehashed the same arguments it made in the Recusal Motion. In other words, debtor argued that the bankruptcy judge's alleged bias was debtor's sole argument for setting aside the Termination Judgment.

On April 7, 2010, CIC moved for payment of administrative rent for the period August 10, 2009 (the petition date), to December 9, 2009 (the rejection date)(the "Administrative Rent Motion"). Debtor did not oppose the motion.

On April 26, 2010, the UST moved to dismiss debtor's case under § 1112(b) for "cause" (the "Dismissal Motion"). The UST asserted that debtor had no possibility of a successful reorganization without the Lease. Debtor responded by stating that it would not oppose the motion.

These motions, along with debtor's Rent Offset Motion

///

///

///

filed on October 19, 2009,[10] were noticed for a hearing on May 24, 2010.

On May 20, 2010, the bankruptcy court issued a tentative decision regarding the various motions. The court granted the UST's Dismissal Motion on the ground that debtor could not reorganize without the Lease, its primary asset. The court further stated that it was inclined to deny all other pending motions as moot due to its decision to dismiss the bankruptcy case.

At the May 24, 2010 hearing, the bankruptcy court granted the UST's Dismissal Motion. The court also decided that it needed to rule on debtor's Set Aside Motion and found it untimely. The court requested that the parties focus their arguments on whether the remaining motions should be addressed by the bankruptcy court or litigated in state court.

Debtor argued that the remaining motions should be litigated in state court. CIC argued that the matter of Locricchio's Fee Application and its request for administrative rent under § 365(d)(3) were within the bankruptcy court's exclusive jurisdiction. The UST argued for dismissal with the rent issue decided by the state court. The court took the matters under advisement.

In a May 27, 2010 Memorandum Decision, the bankruptcy court denied debtor's Set Aside Motion on the grounds that it was

[10] On January 12, 2010, debtor filed a notice that the Rent Offset Motion would be heard on February 16, 2010. Therefore, by the time debtor noticed the hearing, the date for assuming the Lease — December 8, 2009 — had passed. The hearing for the Rent Offset Motion was continued from February 16 to May 24, 2010.

untimely and did not meet the standards for altering or amending a judgment; i.e., the debtor did not demonstrate a manifest error of law or fact or produce any newly discovered evidence.

Citing Pavelich v. McCormick, Barstow (In re Pavelich), 229 B.R. 777, 780-81 (9th Cir. BAP 1999), the bankruptcy court also found that it had jurisdiction post-dismissal over its own orders and to dispose of ancillary matters that were otherwise not moot. However, the court stated that it did not view its jurisdiction over the amount of the rent or compensation due debtor's attorney as exclusive. Nonetheless, the court found it would be unfair to avoid deciding the pending motions because debtor was holding $95,000 cash that, without a ruling, it could freely use after the dismissal of its case to the detriment of CIC. Accordingly, the court exercised its discretion to decide the remaining motions.

First, the court denied Locricchio's Fee Application in its entirety. The bankruptcy court found that Locricchio's services were not beneficial to the estate because he missed the deadline for assumption of the Lease under § 365(d)(4) and, as a result, debtor lost its most valuable asset. The bankruptcy court also denied the application on the alternative ground that it lacked information required by Rule 2016 and, although the UST pointed out the deficiencies, Locricchio made no effort to correct them.

Next, the court denied debtor's Rent Offset Motion which alleged CIC's misconduct and interference with its business relationships was grounds for relieving debtor from the statutory requirement under § 365(d)(3) of paying postpetition rent for the months of August and September. The court observed

-16-

that in response to debtor's allegation that CIC had wrongfully collected rent from Tony Honda, CIC had produced a 1998 letter agreement that authorized those payments. The court found that debtor had never offered any reason why the agreement might be invalid. Thus, the court concluded that there was no legitimate dispute that debtor owed the full amount of the rent due under the Lease, minus any amounts which the subtenants paid to CIC.

Third, the court granted CIC's Administrative Rent Motion. The court noted that debtor filed no opposition to this motion. The court further noted that debtor failed to comply with its November 9, 2009 order, which required debtor to timely pay all postpetition rents until further order. Therefore, the court directed debtor and its counsel to remit all of the estate's cash to CIC in partial satisfaction of CIC's administrative claim and reserved jurisdiction to enforce this requirement.

The court entered the order denying Locricchio's Fee Application on June 29, 2010. The court entered the orders denying debtor's Set Aside Motion and Rent Offset Motion on July 13, 2010, and the corresponding judgments on July 26, 2010. The court entered the order granting CIC's Administrative Rent Motion on July 13, 2010, and corresponding judgment on July 26, 2010. Finally, the court entered the order granting the UST's Dismissal Motion on July 13, 2010.

Debtor timely appealed each of the orders involved in these four appeals. Further, as discussed below, Locricchio timely appealed the order denying his Fee Application.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding

-17-

under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.  Whether the bankruptcy court erred in denying debtor's Recusal Motion;

B.  Whether the bankruptcy court erred in denying debtor's Set Aside Motion;

C.  Whether the bankruptcy court erred in denying Locricchio's Fee Application;

D.  Whether the bankruptcy court erred in granting CIC's Administrative Rent Motion;

E.  Whether the bankruptcy court erred in denying debtor's Rent Offset Motion; and

F.  Whether the bankruptcy court erred in granting the UST's Dismissal Motion.

## IV.  STANDARDS OF REVIEW

We review under an abuse of discretion standard, a bankruptcy court's decision to (1) deny a motion for recusal of a bankruptcy judge, (2) deny a motion for reconsideration under Rule 9023, (3) grant an award of attorney's fees, and (4) grant a motion to dismiss a debtor's case for cause under § 1112(b). See Berry v. U.S. Tr. (In re Sustaita), 438 B.R. 198, 208 (9th Cir. BAP 2010) (recusal motion); Diker v. Dye (In re Edelman), 237 B.R. 146, 150 (9th Cir. BAP 1999) (reconsideration under Rule 9023); Leichty v. Neary (In re Strand), 375 F.3d 854, 857 (9th Cir. 2004) (attorney's fees); Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994) (dismissal of chapter 11 case for cause).

-18-

We follow a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).  If we determine that the court erred under either part of the test, we must reverse for an abuse of discretion.  Id.  First, we "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested."  Id.  Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard.  Id. at 1262 n.20.  We must affirm the court's factual findings unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'"  Id.

Whether CIC was entitled to an administrative rent claim under § 365(d)(3) involves a question of law.  A bankruptcy court's conclusions of law are reviewed de novo.  In re Strand, 375 F.3d at 857.  We also review due process challenges de novo.  Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009).

## V.  DISCUSSION

**A.  CIC's Motion To Dismiss Or Strike Debtor's Briefs In BAP Nos. 10-1403, 10-1404 And 10-1405**

CIC moved to dismiss the appeals for BAP Nos. 10-1403, 10-1404 and 10-1405 under Rule 8010, or, alternatively, strike debtor's briefs under Rule 8006 and debtor opposed.[11]  On

---

[11] Debtor sought and obtained permission to file a single brief in each of the three appeals not to exceed forty pages. Debtor explains that it was impossible to cover all the issues in a single brief so it abandoned that approach in favor of filing a
(continued...)

February 1, 2011, a motions panel of this court denied CIC's motion without prejudice for reconsideration by the merits panel. On reconsideration, we also deny CIC's motion.

Rule 8010 requires, among other things, a table of contents, a statement of the basis of appellate jurisdiction, a statement of issues presented, the applicable standard of appellate review, and a statement of the case. Rule 8010(a)(1)(A-D). Rule 8010(a)(1)(E) states that the "argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to the authorities, statutes and parts of the record relied on."

Although debtor's briefs are mostly noncompliant with Rule 8010, we decline to dismiss the appeals on this basis. The issues involved are not complex and we may rely on the relevant authorities and the record that was before the bankruptcy court to evaluate the merits of these appeals. Kyle v. Dye (In re Kyle), 317 B.R. 390, 393 (9th Cir. BAP 2004) (noting that although summary dismissal is within the Panel's discretion, it should first consider whether informed review is possible in light of the record provided).

Rule 8006 provides that the record on appeal from a bankruptcy court decision consists of designated materials that became part of the bankruptcy court's record in the first instance. On December 13, 2010, debtor filed a Supplemental Designation of the Record, seeking to include in the record

---

[11](...continued)
separate brief in each of the appeals. Apparently, this change caused some compliance problems with Rule 8010.

-20-

numerous orders, pleadings and documents that were entered on the bankruptcy court's docket after the entry of the orders and judgments in these appeals. Rule 8006 does not permit items to be added to the record on appeal to this Panel if they were not part of the record before the bankruptcy court. Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077-78 (9th Cir. 1988).

Because debtor may have referred to these documents in its briefs, CIC seeks to have the briefs stricken with instructions to debtor not to include or refer to any of these supplemental orders, pleadings or documents. At this juncture, we consider it unproductive and unnecessary to strike the briefs, with instructions to debtor to delete references to these orders, pleadings or documents. It is sufficient that we simply do not consider debtor's supplemental designation of the record in evaluating debtor's arguments and we have not done so.

**B.   The Order Denying Debtor's Recusal Motion (BAP No. 10-1284)**

Debtor's main theory for reversal in all four appeals centers on the bankruptcy judge's bias and prejudice against it. Therefore, we review first the court's order denying debtor's Recusal Motion.

Initially, we note that on October 18, 2010, debtor filed a motion for reconsideration of the May 5, 2010, order denying its Recusal Motion. In an October 29, 2010 Memorandum Decision and separate order of the same date, Judge King denied debtor's motion for lack of jurisdiction due to debtor's pending appeal of the May 5, 2010 order. On November 30, 2010, debtor filed a notice of appeal of the order denying its motion for reconsideration (BAP No. 10-1469). On February 11, 2011, the

-21-

Panel dismissed the appeal as untimely. Therefore, debtor's filing of the motion for reconsideration is of no consequence to us in this appeal.

In its appellate brief, debtor describes alleged incidents of judicial bias and misconduct that are much different than those raised in the bankruptcy court and addressed by Judge King's Memorandum Decision. One of the new alleged incidents includes CIC's attorney submitting the November 9, 2009 order to Judge Faris which misstated the court's ruling on CIC's motion for the timely payment of postpetition rent; i.e., debtor maintains that the court ruled that it did not have to pay postpetition rent for August or September whereas the order stated that debtor was to pay all postpetition rent due. Debtor asserts that the judge's signing of the allegedly fraudulent order indicates that CIC's counsel and the judge were working in concert. Debtor further alleges that at the October 19, 2009 hearing on CIC's motion for the timely payment of postpetition rent, the bankruptcy court threatened to deny debtor an extension of time to assume or reject the Lease as a consequence for its nonpayment of the postpetition rent.[12]

_____

[12] Debtor recites these arguments in some fashion in all of its briefs. Debtor overlooks the fact that the November 9, 2009 order for the payment of postpetition rent — which it contends is fraudulent — is a final order. Moreover, the bankruptcy court's comments regarding the consequences to a debtor for nonpayment of postpetition rent were entirely consistent with Ninth Circuit case law. See Sw. Aircraft Servs., Inc. v. City of Long Beach (In re Sw. Aircraft Servs., Inc.), 831 F.3d 848 (9th Cir. 1987). In In re Sw. Aircraft Servs., Inc., the Ninth Circuit held that the bankruptcy court had discretion to consider all the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequence of a violation of
(continued...)

-22-

Presumably debtor relies on <u>Polaroid Corp. v. Eastman Kodak Co.</u>, 867 F.2d 1415 (1989), as authority for allowing these new examples of alleged judicial bias and misconduct to be raised for the first time on appeal. According to debtor, <u>Polaroid</u> holds that a recusal motion "has no time limits." Thus, debtor contends that it is not prohibited from raising new examples of bias for the judge's disqualification at "anytime." We are not persuaded that the holding in <u>Polaroid</u> stretches so far.

In <u>Polaroid</u>, the judge made numerous rulings and issued orders in the case for six and half years before she disqualified herself after learning that her mother-in-law had an interest in Kodak. After she disqualified herself, Kodak filed a motion to disqualify and sought to vacate orders that were entered six and half years earlier. The district court denied the motion and the court of appeals affirmed. The court held that although there was no time limit to file a motion for recusal, under the circumstances of the case and due to the passage of time, granting the motion would produce a result that was inequitable and unfair. <u>Id.</u> at 1419.

The facts of this case are far afield from those in <u>Polaroid</u>. Judge Faris did not disqualify himself and Judge King found no basis for granting debtor's Recusal Motion on the facts

---

[12](...continued)
§ 365(d)(3) should be forfeiture of the unassumed lease, some other penalty, or no penalty at all. <u>Id.</u> at 854. The court held that the "failure to make payments under subsection (d)(3) constitutes simply one element to be considered, along with all the other relevant factors, in determining whether cause exists under subsection (d)(4) to extend the [120]-day period for assumption or rejection." <u>Id.</u> at 853-54.

debtor alleged.  Moreover, the newly asserted incidents of bias raised in this appeal were considered in connection with debtor's second motion to recuse Judge Faris.  On August 3, 2011, Judge King issued a Memorandum Decision and separate order on that motion.[13]  That order is now the subject of a separate appeal (BAP No. 11-1464).  Accordingly, we do not address the propriety of the November 9, 2009 order or debtor's other newly asserted allegations in this appeal.

Otherwise, debtor's opening brief fails to pinpoint with any degree of specificity how Judge King abused his discretion by denying debtor's Recusal Motion.  Therefore, any assignment of error has also been waived on appeal.  Laboa v. Calderon, 224 F.3d 972, 981 n.6 (9th Cir. 2000) (issues not specifically and distinctly argued in the appellant's opening brief are waived on appeal).  As debtor's appeal raises no substantial question, we summarily affirm Judge King's ruling on the merits. There are simply no facts in the record that could create a reasonable doubt concerning the bankruptcy judge's impartiality. See Seidel v. Durkin (In re Goodwin), 194 B.R. 214, 222 (9th Cir. BAP 1996) (evaluations of bias or prejudice are judged from an objective perspective).

**C.    The Order Denying Debtor's Set Aside Motion (BAP No. 10-1403)**

Debtor sought to set aside the Termination Judgment under

---

[13] We take judicial notice of the documents docketed and imaged at Dkt. Nos. 353 and 354 in the underlying bankruptcy case.  Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-24-

Rule 9023. Rule 9023 provides that a motion to alter or amend a judgment shall be filed no later than fourteen days after entry of judgment. The bankruptcy court entered the Termination Judgment on March 3, 2010, and debtor did not file its Set Aside Motion until April 5, 2010, thirty-three days later. Thus, debtor's Set Aside Motion was untimely and the bankruptcy court properly denied debtor's Set Aside Motion on this ground.

Because of the untimely filing, we observe that the scope of our review in this appeal is limited to the order denying debtor's Set Aside Motion. Debtor's notice of appeal for BAP No. 10-1403 designated and attached only the order denying its Set Aside Motion, not the underlying order that resulted in the Termination Judgment.[14] Our 9th Cir. BAP Rule 8001(a)(1) requires the notice of appeal to designate the order or judgment from which an appeal is taken. There is no reason to depart from our rule when debtor's Set Aside Motion was untimely filed. Compare Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.), 344 B.R. 94, 99 (9th Cir. BAP 2006) (Panel may depart from its rule when a motion under Rule 9023 is timely filed, there is no prejudice to the parties and they have fully briefed the issues).[15]

---

[14] Any appeal of that Judgment on July 13, 2010, when these appeals were filed, would have been untimely.

[15] In any event, at the hearing on these appeals, Locricchio offered no satisfactory reason for not seeking an extension of time to assume or reject the Lease. When questioned by the Panel, Locricchio explained that he did not move for an extension of time because once CIC wrongly declared debtor in default of its payments under the Lease, debtor lost its opportunity for a
(continued...)

-25-

**D.   The Orders Granting CIC's Administrative Rent Motion (BAP No. 10-1404) And Denying Debtor's Rent Offset Motion (BAP No. 10-1405)**

Because the subject matter of the orders granting CIC's Administrative Rent Motion and denying debtor's Rent Offset Motion are so interrelated, we consider them together.

Debtor's briefs in these appeals include its mantra-like arguments regarding the fraudulent nature of the court's November 9, 2009 order, the bankruptcy court's alleged threat to deny debtor's motion for an extension of time to assume or reject the Lease, and the wrongful nature of CIC's acts or those of its counsel. None of those arguments were directly before the bankruptcy court.[16] Debtor offers no other clear legal basis for reversing the bankruptcy court's decisions in its briefs.

Section 365(d)(3) provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. . . .

"[Section] 365(d)(3) makes clear that a debtor must perform all obligations owing under a lease — particularly the obligation to

---

[15](...continued)
third party to buy out the remaining time on its Lease. According to Locricchio, moving for more time was irrelevant because it would not bring the buyer back to life, and without a buyer, debtor could not file a plan with any prospect of being confirmed. Because of these statements, it is difficult to ascertain the reason for debtor's appeal of the order denying its motion to set aside the Termination Judgment.

[16] As mentioned by the bankruptcy court in its May 27, 2010 Memorandum Decision, debtor did not file an opposition to CIC's Administrative Rent Motion.

pay rent at the contract rate — until the lease is rejected." Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.), 392 F.3d 1064, 1068 (9th Cir. 2004). If a debtor fails to timely pay postpetition rent, the lessor's right to payment becomes an administrative claim for the accrued liability on the unpaid rent. See Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.), 27 F.3d 401, 403–405 (9th Cir. 1994). Accordingly, through the plain language of § 365(d)(3) and Ninth Circuit case law, CIC was entitled to an administrative claim for the unpaid postpetition rent as a matter of law.

Moreover, nowhere did debtor cite any authority which supported its request for an offset of postpetition rent. Debtor could not use § 553 for several reasons. Section 553 does not establish independent setoff rights in bankruptcy but merely preserves setoff rights to the same extent they are allowed under state law. United States v. Gould (In re Gould), 401 B.R. 415, 423 (9th Cir. BAP 2009), aff'd, 603 F.3d 1100 (9th Cir. 2010). Debtor has pointed to no Hawaii law which would authorize offset under these circumstances. Further, the Lease contained a provision that prohibited the abatement of rent: "Non-abatement of Rent. Except as otherwise provided herein the rent shall not abate, diminish or cease." Thus, the Lease does not authorize the abatement of rent on these facts and debtor has not argued otherwise.

In addition, the plain language of § 553 demonstrates that the statute is inapplicable. Section 553 states that a creditor may assert setoff as a defense to a claim brought by the debtor

-27-

against a creditor. <u>Carolco Television, Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entm't Grp. Inc.)</u>, 963 F.2d 1269, 1277 (9th Cir. 1992) (emphasis in original). Here, debtor is asserting offset as a defense to CIC's claim for postpetition rent. Finally, § 553 requires that "each debt or claim sought to be offset must have arisen prior to the filing of the bankruptcy petition." <u>United States v. Carey (In re Wade Cook Fin. Corp.)</u>, 375 B.R. 580, 594 (9th Cir. BAP 2007). Debtor seeks to offset the prepetition rent paid by Tony Honda to CIC against its obligation to pay postpetition rent under § 365(d)(3). Plainly debtor cannot meet the timing requirement under the statute.[17]

In reality, debtor's offset argument is a bit of a red herring. It was unnecessary for the court to resolve whether debtor was entitled to offset its postpetition rent owed to CIC against CIC's alleged wrongful collection of prepetition rents from Tony Honda before granting CIC's Administrative Rent Motion. CIC's administrative rent claim was far greater than what debtor had in its account.[18] Debtor sought a credit or

[17] The bankruptcy court's May 27, 2010 Memorandum Decision does not discuss § 553. Debtor may have been able to rely on § 558 which provides that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate . . . ." However, nowhere did debtor provide any authority that it had setoff rights under state law. <u>See</u> <u>In re PSA, Inc.</u>, 277 B.R. 51, 54 (Bankr. D. Del. 2002) (holding that "a right to setoff must be established under state law so that the debtor then may assert the setoff as a defense reserved by § 558.").

[18] Debtor never opened a debtor-in-possession bank account. Instead, monies were held in Locricchio's trust account.

-28-

offset of $85,000 in its Rent Offset Motion; however, the amount of CIC's administrative rent claim was $307,975.68 and the amount remaining in debtor's account was $95,218.54. Therefore, even if the court allowed the $85,000 offset as debtor requested, debtor's estate would still owe CIC a substantial amount in administrative rent.

Finally, because the court denied Locricchio's fees — a decision which we affirm on appeal — there were no other allowed and unpaid administrative expenses asserted against debtor's estate. Therefore, CIC was entitled to all the funds in debtor's estate as of the date of the dismissal despite debtor's asserted offset. In sum, we discern no errors in the bankruptcy court decision to grant CIC's Administrative Rent Motion and deny debtor's Rent Offset Motion.

**E.    The Order Denying Locricchio's Fee Application (BAP No. 10-1284)**

The UST filed a motion to dismiss Locricchio's appeal of the order denying his Fee Application on the ground that it was untimely. Citing In re Strand, 375 F.3d at 858, the motions panel denied the UST's motion on the grounds that the fee order was interlocutory, the appeal of which became timely by the July 13, 2010 order dismissing debtor's case

On appeal, the UST again raises the issue whether this court has jurisdiction over the appeal of the bankruptcy court's order denying Locricchio's Fee Application because it was untimely. The UST incorporates her arguments concerning lack of jurisdiction in her previously filed motion to dismiss and argues that the facts in In re Strand are distinguishable from

-29-

those in this case. In In re Strand, the court approved an initial fee application of $22,012.50 but authorized payment of $16,510. The attorney then filed a second, final fee request. The Ninth Circuit held it was proper for the bankruptcy court to adjust its first award when determining the final compensation amount. Id. at 858.

While we give deference to motions panel decisions made in the course of the same appeal, we have an independent duty to decide whether we have jurisdiction. Couch v. Telescope, Inc., 611 F.3d 629, 632 (9th Cir. 2010). In re Strand holds that orders determining interim compensation in an ongoing bankruptcy proceeding are generally considered interlocutory in nature. 375 F.3d at 858. However, the interim nature of Locricchio's fee request was rendered final by the entry of the July 13, 2010, order dismissing debtor's case. See Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1114 (9th Cir. 2000) (noting that prior interlocutory orders are "merged into final judgment"); Munoz v. Small Bus. Admin., 644 F.2d 1361, 1364 (9th Cir. 1981) (noting that "an appeal from the final judgment draws in question all earlier non-final orders and all rulings which produced the judgment"). Therefore, Locricchio's appeal was timely and we have jurisdiction to consider its merits.

Locricchio again incorporates the arguments made in all these appeals regarding the bankruptcy judge's bias against debtor. Locricchio also vaguely refers to a due process violation that he describes as an "ambush." According to Locricchio, the court stated in its tentative ruling that it

-30-

would not decide his Fee Application and then, at the hearing, the court changed its ruling and denied his fees. Locricchio contends that he should have been allowed to amend and add to his application.

The facts alleged by Locricchio do not constitute a due process violation. "The fundamental requisite of due process of law is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Our review of the record shows Locricchio had ample opportunity to amend and add to his application after the UST objected to it. The Fee Application was filed on February 4, 2010 and the UST objected on February 25, 2010. Since the hearing was postponed until after the Recusal Motion was determined, Locricchio had over two months to amend his application before the hearing on May 24, 2010. Per the local bankruptcy rules, replies are due seven days before a hearing. As a consequence, Locricchio's reply was due before the bankruptcy court issued its tentative ruling. Furthermore, Locricchio had the opportunity to present oral argument at the hearing. Under these circumstances, the court gave Locricchio his full due process rights.

The legal standard to determine the allowance of fees involves statutory interpretation and construction of § 330(a). Ferrette & Slater v. U.S. Tr. (In re Garcia), 335 B.R. 717, 722 (9th Cir. BAP 2005). Under § 330(a)(1), after notice and a hearing, the court may award an attorney employed under § 327:

> (A) reasonable compensation for actual, necessary
> services rendered by the . . . attorney . . .; and

-31-

(B) reimbursement for actual, necessary expenses.

Under § 330(a)(2), "the court may . . . award compensation that is less than the amount of compensation that is requested." In turn, § 330(a)(3) provides:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Finally, § 330(a)(4) provides that "the court shall not allow compensation for . . .(ii) services that were not —

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case."

The record shows that the court applied the correct legal standards when making its ruling. First, the record supports the court's factual finding that Locricchio's services did not benefit the estate. Locricchio missed a crucial deadline that caused debtor to lose the main asset of its estate. Nonetheless, it is plainly evident from the record in these appeals that Locricchio seeks to blame everyone else for his misstep rather than accept responsibility.

Second, even under the most lenient standards, Locricchio's billing statements were woefully inadequate. He simply

-32-

describes his services as a two-hour "meeting with Jim Slemons" or a three hour "meeting re Reorganization Plan." Other time entries simply give the date, the amount of time, and the name of the document worked on. There simply was not enough detail for the court to determine whether the fees requested were reasonable.

Locricchio had the burden of proof to demonstrate entitlement to the requested fees, which includes providing the proper documentation for the time worked. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The record shows that Locricchio failed to meet his burden of proof. Accordingly, we discern no error with the court's decision to deny his fees in their entirety.

**F.    The Order Granting the UST's Dismissal Motion (BAP No. 10-1284)**

Section 1112(b)(1) provides that a bankruptcy court shall convert or dismiss a case, whichever is in the best interests of creditors and the estate, if "cause" is established. The "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" constitute "cause" to dismiss a chapter 11 case. § 1112(b)(4)(A).

Here, the UST moved to dismiss debtor's case due to its loss of the Lease. Debtor did not oppose the UST's motion in the bankruptcy court nor does it argue on appeal that the dismissal itself was improper. Debtor's only challenge to the order on appeal rests on its assertion that the court improperly retained jurisdiction to enforce its directive to debtor and

-33-

Locricchio to remit the estate's cash to CIC as partial satisfaction of its administrative rent claim.[19]  A bankruptcy court has ancillary jurisdiction to enforce its own orders.  <u>Sea Hawk Seafoods, Inc. v. State of Alaska (In re Valdez Fisheries)</u>, 439 F.3d 545, 549 (9th Cir. 2006).

Therefore, based on the record before us, we summarily affirm the court's decision to dismiss debtor's case.

**VI.  CONCLUSION**

Having determined that there is no basis for reversal for any of the court's decisions, we AFFIRM each of the orders on appeal.

---

[19] The order dismissing the case specifically stated that the court was retaining jurisdiction to enforce the payment of administrative rent.