FILED

DEC 08 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   AZ-14-1106-DJuKi |
| ) | |
| STUART M. STARKY and CHERYL ) | Bk. No.   2:12-bk-22121-PS |
| M. STARKY, ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| STUART M. STARKY; CHERYL M. ) | |
| STARKY, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| DAVID A. BIRDSELL, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on November 20, 2014
at Phoenix, Arizona

Filed - December 8, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Sarah Sharer Curley, Bankruptcy Judge, Presiding

---

Appearances:     Christopher J. Piekarski of Piekarski & Brelsford,
                 P.C for appellants Stuart and Cheryl Starky;
                 Patrick T. Derksen of Witthoft Derksen, P.C. for
                 appellee David A. Birdsell.

---

Before:  DUNN, JURY, and KIRSCHER, Bankruptcy Judges.

DUNN, Bankruptcy Judge:

Chapter 7[1] debtors Stuart and Cheryl Starky ("Debtors") appeal the bankruptcy court's order awarding reasonable attorneys' fees and co7sts to the chapter 7 trustee ("Trustee") after extended proceedings relating to the Debtors' exemption claims, the protracted nature of which resulted in large part from the actions, or more appropriately, the inaction, of Debtors and their counsel. We perceive no abuse of discretion in the bankruptcy court's award of fees and costs to Trustee's counsel. Accordingly, we AFFIRM.

## I. FACTUAL BACKGROUND

The relevant facts in this appeal are essentially undisputed. The Debtors filed their chapter 7 petition on October 8, 2012. They filed their schedules contemporaneously with their bankruptcy petition, and on their Schedule B, the Debtors identified two Fidelity Advisor 529 Plans (the "529 Plans"), valued at $4,115.76 and $5,672.60 respectively, and two Educational Savings Accounts with SunAmerica (the "SunAmerica Accounts"), valued at $2,607.37 and $1,719.46 respectively. The Debtors claimed exemptions in both 529 Plans and in both SunAmerica Accounts in their original Schedule C.

In their original schedules, the Debtors also listed two bank accounts, a checking account and a savings account, at JP

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

Morgan Chase Bank ("Chase Bank"). However, in fact, the Debtors had eight accounts at Chase Bank on the petition date, six of which were undisclosed in their schedules.

The § 341(a) meeting in the Debtors' bankruptcy case was held on November 13, 2012, at which the Debtors were examined by the Trustee. Thereafter, on December 4, 2012, the Trustee filed an objection ("Exemption Objection") to the Debtors' claimed exemptions in the two 529 Plans and the two SunAmerica Accounts on the precautionary basis that the Debtors had not provided the Trustee with copies of documentation for the 529 Plans and SunAmerica Accounts that would allow the Trustee to determine if they were "correctly set up and funded within the time limits to allow the exemptions." Contemporaneously, the Trustee filed a Notice of Bar Date ("Notice") setting a deadline of twenty-one days following service of the Notice for any party to respond and request a hearing on the Exemption Objection. The Notice provided that, "If no objections are filed, the Court may deny the Debtor's [sic] exemption." Both the Exemption Objection and the Notice were served on the Debtors and their counsel.

The Debtors did not respond or request a hearing in opposition to the Exemption Objection.

In the meantime, the Trustee filed an application to employ counsel on December 13, 2012, that was granted the following day. See Docket Nos. 18 and 22.[2]

---

[2] The parties did not include the application and order to employ Trustee's counsel in their excerpts of record. We have exercised our discretion to review the bankruptcy court's main
(continued...)

-3-

The bankruptcy court entered an order ("Exemptions Order") sustaining the Exemption Objection and "ordering turnover of the assets to the Trustee" on February 20, 2013.

On or about April 11, 2013, counsel for the Trustee wrote a demand letter ("Demand Letter") to Debtors' counsel. At some point in time, the Trustee apparently had been made aware of the Debtors' undisclosed Chase Bank accounts. In the Demand Letter, Trustee's counsel demanded turnover of the two 529 Plans and the two SunAmerica Accounts and turnover

> of all funds in Chase [Bank] Accounts -5358, -0691, -2774, -6083, -9559 and -1257 as of the Petition Date . . . of the balance in Chase [Bank] Accounts -2858 and -4040 (over $150) as of the Petition Date [and] copies of the bank statements for the Chase [Bank] Accounts as of the Petition Date.

The Debtors apparently did not respond to the Demand Letter; so, on April 24, 2013, Trustee's counsel filed a Motion for Turnover and Accounting of Bankruptcy Estate property, pursuant to 11 U.S.C. § 542 ("Turnover Motion"). In the Turnover Motion, the Trustee sought bank statements and an accounting as to each of the Debtors' Chase Bank accounts on the petition date; turnover of all funds demanded in the Demand Letter; and an award of the Trustee's attorneys fees and costs incurred.

At this point, Debtors and their counsel finally woke up to their peril. On May 17, 2013, the Debtors filed amended

[2](...continued)
case docket and the documents on record therein to assist us in our consideration of this appeal. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-4-

Schedules B and C: The Debtors listed seven Chase Bank accounts on their amended Schedule B; and they renewed their exemption claims to the 529 Plans and SunAmerica Accounts in their amended Schedule C. In their amended Schedule C, the Debtors explicitly asserted that the two 529 Plans and one of the SunAmerica Accounts were not property of their bankruptcy estate, but anomalously, they did not make the same statement as to the second SunAmerica Account. On the same date, the Debtors filed a response ("Response") to the Turnover Motion.

In their Response, the Debtors argued that the two SunAmerica Accounts were set up under the Uniform Transfer to Minors Act ("UTMA"), as adopted in Arizona. The Debtors accordingly argued that they had no legal ownership interests in the SunAmerica Accounts, and there was no estate interest in the SunAmerica Accounts. As to the 529 Plans, the Debtors argued that they qualified as 529 College Savings Plans under 26 U.S.C. § 529 and, consequently, were not property of the estate to the extent of funds paid into the 529 Plans more than 720 days prior to the Debtors' bankruptcy filing and up to $5,475 paid into each 529 Plan between 365 and 720 days prior to the petition date. According to the Debtors, under those standards, none of the funds in the 529 Plans on the petition date belonged to the estate. Finally, as to the Chase Bank accounts, the Debtors argued that the account ending -1257 was a closed savings account. As to the rest of the accounts, the Debtors acknowledged nonexempt funds totaling $273.72, which the Debtors agreed to turn over "upon the request of the Trustee."

On May 30, 2013, the Trustee filed a reply ("Reply"). In

-5-

his Reply, the Trustee argued that the prior Exemption Order was final, and the Debtors had not provided any authority justifying relief under Civil Rule 59 or 60(b), applicable in bankruptcy proceedings under Rules 9023 and 9024. In any event, the Debtors still had not provided adequate documentation to establish that the SunAmerica Accounts were validly created under UTMA. In addition, the Trustee argued that the Debtors had not presented adequate authority or evidence that the 529 Plans were not property of the estate. Finally, the Trustee argued that the Debtors had presented no evidence to establish that any of the funds in any of the Chase Bank accounts could be traced to a nondebtor. Other than $300 in Chase Bank account -5358, the Trustee argued that the balance of funds in the Chase Bank accounts on the petition date were subject to turnover. On June 12, 2013, the Trustee filed a renewed objection ("2d Exemption Objection") to the Debtors' exemption claims in the SunAmerica Accounts and the 529 Plans, relying on some of the same arguments asserted in the Reply.

The Debtors responded ("2d Response") to the 2d Exemption Objection on July 3, 2013. In the 2d Response, the Debtors argued that in the absence of bad faith or prejudice, under Rule 1009(a), they could amend their exemption schedule at any time before their bankruptcy case was closed. Since they had disclosed the 529 Plans and the SunAmerica Accounts from the beginning in their schedules, neither prejudice nor bad faith could be imputed to the Debtors. In addition, they argued that the Exemption Order had no preclusive effect under applicable Ninth Circuit authority. Finally, they argued that the Turnover

-6-

Motion was inappropriate procedurally. Since the issues to be determined focused on whether the 529 Plans and the SunAmerica Accounts were property of the Debtors' bankruptcy estate, the Debtors argued that Rule 7001(2) required the Trustee to initiate an adversary proceeding rather than pursue turnover by motion as a contested matter.

The Trustee filed a reply ("2d Reply") on July 22, 2013. In the 2d Reply, the Trustee argued that the Debtors' right to amend their schedules was not absolute, and in this case, allowing the Debtors to amend their Schedule C was precluded because the Exemption Order was final, and the estate had been prejudiced by the costs incurred in reliance on the Debtors original schedules and Statement of Financial Affairs. The Trustee reiterated his request for reimbursement of attorneys' fees and costs. The Trustee further argued that the Debtors had waived any requirement that an adversary proceeding be filed in lieu of the Turnover Motion by failing to file a response to the Exemption Objection. In any event, the Debtors had been afforded all of the essential due process protections through the procedures followed by the Trustee.

The bankruptcy court held a hearing on the Turnover Motion on July 23, 2013, and after hearing argument from counsel, granted the Turnover Motion as to the Chase Bank accounts and continued the Turnover Motion as to the 529 Plans and the SunAmerica Accounts. An order approving turnover of all nonexempt funds in the Chase Bank accounts, totaling $1,005.73, was entered on July 25, 2013. That order was not appealed. A further hearing on the remaining open issues regarding the

Turnover Motion was continued to November 20, 2013, and ultimately, to February 5, 2014.

The Trustee conducted Rule 2004 examinations of the Debtors to obtain documents and information regarding the 529 Plans and the SunAmerica Accounts.

On July 25, 2013, the Debtors finally filed a motion to set aside ("Motion to Vacate") the Exemption Order, based on their argument that the subject assets were not property of their estate. The Trustee responded on August 8, 2013, arguing that the Debtors did not establish grounds for such relief under any applicable subsection of Civil Rule 60(b). Initially, the bankruptcy court scheduled a hearing on the Motion to Vacate for January 8, 2014, but ultimately continued the hearing to February 5, 2014, in conjunction with the final hearing on the Turnover Motion.

At a preliminary hearing on November 20, 2013, the bankruptcy court required the Trustee to file a further position statement on the Turnover Motion and the Motion to Vacate by December 20, 2013, and gave the Debtors until January 2, 2014, to respond.

The Trustee filed his memorandum ("Trustee Position") on December 20, 2013. In the Trustee Position, after summarizing the background of the parties' continuing disputes, the Trustee reargued that relief was not available to the Debtors under Civil Rule 60(b), and that the Motion to Vacate should be denied based on the Debtors' culpable conduct in failing to respond to the Exemption Objection after being duly noticed. The Trustee further argued that in these circumstances, the Trustee's

-8-

attorneys' fees and expenses should be reimbursed by the Debtors, and the Trustee provided an itemization of the fees and expenses incurred. Finally, the Trustee argued, with supporting evidence, that $1,000 contributed to one of the 529 Plans during the year prior to the Debtors' bankruptcy filing date was not exempt in any circumstances.

The Debtors filed their memorandum ("Debtors' Position") on January 2, 2014. In Debtors' Position, the Debtors argued that they did not need relief under Civil Rule 60(b) because Rule 7001(2) still required that the Trustee pursue turnover through an adversary proceeding, and in any event, the Trustee had not met his burden of proof to establish that the subject assets were property of the estate. In addition, the Debtors argued that the Trustee was not entitled to an award of fees and costs because the Trustee had not filed the required adversary proceeding and laid the blame for the extensive proceedings on the Trustee, for "[h]ad the [Trustee] followed the required procedure or made requests for additional documentation at an earlier stage, this issue could have been resolved long ago." The Debtors conceded in their prayer for relief that the estate was entitled to an order directing the Debtors "to turn over contributions to the [529 Plans] within 365 [days] of their bankruptcy filing," but asserted that the estate was entitled to nothing more.

The bankruptcy court conducted the final hearing ("Hearing") on the Turnover Motion and the Motion to Vacate on February 5, 2014. After colloquy with the Trustee's counsel, during which Trustee's counsel conceded that upon review of the documentation for the 529 Plans and the SunAmerica Accounts, as a substantive

matter, the estate only had a claim to $1,000 total from the accounts, the bankruptcy court concluded that it only would require turnover of $1,000. The bankruptcy court then confirmed with Trustee's counsel the itemized fees and costs for the estate and that the estate would have only about $2,000 to pay them.

The bankruptcy court then turned to counsel for the Debtors, who admitted that both he and the Debtors were aware that any contributions to the 529 Plans within one year prior to the petition date would have to be turned over to the Trustee, as he and the Debtors had discussed that obligation before their bankruptcy filing. The bankruptcy court then stated:

> You also – because you have dragged this out for too long – haven't responded forthrightly to the Trustee. Have caused – let's put it extensive pleading. So, I have a lot before me now where this could have been resolved very quickly. So, from my standpoint the Debtor[s] need[] to take responsibility for the attorney's fees and costs incurred by the Trustee. It should never have happened this way. It should not have been this prolonged, the process.

Tr. of Feb. 5, 2014 hr'g, at 12:23-25 to 13:1-5. Debtors' counsel responded that he did not disagree that the Debtors should pay "part of it." See Tr. of Feb. 5, 2014 hr'g, at 13, 14 and 16. The bankruptcy court further pointed out that the Trustee's fees and costs did "not appear unreasonable." Tr. of Feb. 5, 2014 hr'g, at 13:6-9. Debtors' counsel then suggested that under the circumstances, a partial award of fees and costs to the estate might be appropriate.

> Mr. Piekarski: There were – there were a couple errors, but at the same time the estate is also not faultless here either. It cuts both ways. So, if there was some kind of, you know, splitting the difference I'm not sure that we would object. I think that would be a fair outcome.

-10-

Tr. of Feb. 5, 2014 hr'g, at 16:12-16. Trustee's counsel responded that he did not have authority to engage in that kind of bargaining at the Hearing. Tr. of Feb. 5, 2014 hr'g, at 16:19-20. Debtors' counsel did not object to the Trustee's fees and costs on reasonableness grounds at the Hearing.

Ultimately, the bankruptcy court ruled that the Debtors would only be required to turn over $1,000 from the 529 Plans and could retain the other disputed assets, but it further ruled that the Debtors would be required to pay the Trustee's attorneys' fees and costs incurred. An order consistent with the bankruptcy court's oral rulings ("Final Order") was entered on February 26, 2014.

The Debtors filed a timely notice of appeal of the Final Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) and (E). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion in awarding the Trustee's reasonable attorneys' fees and expenses against the Debtors?

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's decision to award attorney's fees and costs for abuse of discretion. See, e.g., Cal. Emp. Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1152 (9th Cir. 1996). A bankruptcy court abuses its discretion if it applies the incorrect legal standard or misapplies the correct

-11-

legal standard, or if its fact findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We may affirm the bankruptcy court's decision on any basis supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

This appeal shines a spotlight on a persistent problem that arises in some consumer bankruptcy cases: failures of debtors and/or their counsel to respond timely, or at all, to the trustee's requests for information and documentation on behalf of the estate. Based on our experience as bankruptcy judges, such failures generally result from one or more of the following three causes: First, some consumer bankruptcy attorneys, already carrying a heavy case load, seek further volume at the expense of service on behalf of their existing clients. They simply do not have enough time to respond timely to trustee requests for information and documentation that require follow-up with their clients, particularly if the clients themselves are not responsive, as the attorneys pursue further fee-paying work.

Second, some consumer bankruptcy attorneys, on occasion or unfortunately, chronically, are simply inattentive to the details that are the essence of a consumer bankruptcy law practice. They do not return telephone calls and do not respond to letter requests for information or documents, generating unnecessary and costly motions to get a court order to deal with the collection

-12-

of information that should have been provided promptly and informally.

Finally, we suspect that on some occasions, debtors and their counsel drag their feet on requests for documents and information in the hope that with the passage of time, the trustee may abandon the pursuit as not worth the effort and leave some assets that otherwise would be available for estate administration in the hands of the debtors.

The record in this appeal reflects that both of the latter two causes may be in play in this case, as discussed in more detail infra. The Debtors advance three arguments as to why the bankruptcy court abused its discretion in awarding the Trustee fees and costs against them for their failure to cooperate.

A. Trustee's Duty to Investigate

As the Debtors correctly point out in their opening brief, under § 704, the chapter 7 trustee has the duty to "investigate the financial affairs of the debtor" and the duty to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest." See § 704(a)(1) and (4). The Debtors identified and claimed exemptions in the 529 Plans and the SunAmerica Accounts in their schedules filed with their bankruptcy petition on October 8, 2012. They complain that the Trustee "did not request documents from the debtors to determine whether the accounts were assets of the estate until . . . July 29, 2013." Appellants' Opening Brief, at 12. However, their complaint is disingenuous.

Debtors also have duties under the Bankruptcy Code. Section

-13-

521(a)(3) provides that debtors shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title," and § 521(a)(4) provides that debtors shall "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate." Rule 4002(a)(4) underlines those responsibilities by requiring that debtors "cooperate with the trustee in . . . the administration of the estate."

We recognize that chapter 7 trustees have the affirmative statutory duty to investigate the financial affairs and assets of debtors whose estates they administer. However, information about a debtor's assets, of necessity, must come primarily if not entirely from the debtor. The trustee cannot conjure it out of thin air.

"When a debtor files a Chapter 7 bankruptcy petition, all of the debtor's assets become property of the bankruptcy estate, see 11 U.S.C. § 541, subject to the debtor's right to reclaim certain property as 'exempt.'" Schwab v. Reilly 560 U.S. 770, 774 (2010). Section 522(l) provides that if a chapter 7 debtor claims assets as exempt in his or her schedules, "[u]nless a party in interest objects, the property claimed as exempt . . . is exempt." The deadline for filing objections to claimed exemptions is short. Rule 4003(b)(1) generally requires that a party in interest, including the chapter 7 trustee, must file an objection to an exemption claim within thirty days following the conclusion of the § 341(a) meeting or the right to object is waived. Taylor v. Freeland & Kronz, 503 U.S. 638, 642-44 (1992) ("Deadlines may

-14-

lead to unwelcome results, but they prompt parties to act and they produce finality.").

Since the Supreme Court's decision in <u>Taylor v. Freeland & Kronz</u>, chapter 7 trustees have taken the admonition to prompt action to heart. In many cases where trustees do not receive documentation required to confirm debtors' exemption claims by the § 341(a) meeting or shortly thereafter, we see precautionary objections to exemptions, such as the Exemption Objection in this case, filed to preserve potential and actual objections to claimed exemptions before the Rule 4003(b)(1) deadline runs. Typically, such objections are resolved promptly without any extensive proceedings before the bankruptcy court when debtors or their counsel respond to the trustee with information and documentation supporting the claimed exemption, and the objection is withdrawn. This case is not typical in that neither the Debtors nor their counsel ever responded to the Trustee's Exemption Objection, let alone by the noticed deadline.

In the Exemption Objection, the Trustee objected to the Debtors' claimed exemptions in the 529 Plans and the SunAmerica Accounts solely because the Debtors did not provide documentation that the subject accounts were "correctly set up and funded within the time limits to allow the exemptions." The Exemption Objection, which was served both on the Debtors and their counsel by first class mail on December 4, 2012, clearly advised Debtors and their counsel that the Trustee needed documentation to verify the appropriateness of the Debtors' claimed exemptions in the 529 Plans and the SunAmerica Accounts. On this record, the Debtors' assertion that the "estate did not request documents from the

-15-

[D]ebtors to determine whether the accounts were assets of the estate until . . . July 29, 2013" (Appellants' Opening Brief, at 12) is not credible. The argument that the Trustee violated his duties under § 704(a)(1) and (4) in pursuing turnover of the 529 Plans and the SunAmerica Accounts is meritless, bordering on the frivolous.

B. Motion v. Adversary Proceeding

The Debtors next argue that the procedural path taken by the Trustee and his counsel was incorrect in that Rule 7001(2) requires an adversary proceeding when a party seeks a determination as to "the validity, priority, or extent of a lien or other interest in property." Emphasis added. See, e.g., Cogliano v. Anderson (In re Cogliano), 355 B.R. 792, 804 (9th Cir. BAP 2006). Here, Debtors argue that the Trustee needed to secure an initial determination through an adversary proceeding that the 529 Plans and the SunAmerica Accounts were property of their bankruptcy estate and thus subject to turnover.

However, the Debtors did not raise any issue as to whether the 529 Plans and the SunAmerica Accounts were estate property until they filed their amended Schedules B and C and their Response to the Turnover Motion on May 17, 2013. Section 521(a)(1)(B)(i) provides, among a chapter 7 debtor's duties, the obligation to file schedules of their assets and liabilities. In their initial schedules filed on October 8, 2012, the Debtors listed the 529 Plans and the SunAmerica Accounts along with their other assets on their Schedule B and claimed exemptions in those assets on their Schedule C. In neither schedule did they claim that any of the 529 Plans or the SunAmerica Accounts were not

-16-

property of their bankruptcy estate. That claim only belatedly was made as to the 529 Plans and one of the SunAmerica Accounts in their amended Schedule C. A lot had happened before they made that claim.

The Trustee had filed the Exemption Objection, and no response was filed by the deadline. Accordingly, the Trustee submitted the Exemptions Order, and it was entered on February 20, 2013. The Exemptions Order sustained the Trustee's objections to the subject exemption claims and ordered "turnover of the assets to the Trustee." No appeal was taken from the Exemptions Order, and it became final. The Trustee subsequently filed the Turnover Motion, and as noted by the bankruptcy court at the Hearing, "Rule 7001 clearly gives the estate the ability to file a motion against the Debtor." Rule 7001(1) generally requires that an adversary proceeding be filed to recover money or property, but it provides a specific exception for "a proceeding to compel the debtor to deliver property to the trustee." Since the Debtors from the outset of the case had scheduled the 529 Plans and the SunAmerica Accounts as their assets, and the Trustee had obtained an uncontested order requiring the turnover of those assets that became final, we see nothing procedurally improper in the Trustee pursuing the Turnover Motion as a contested matter.

However, even assuming that at some point in this process the "property of the estate" issue became preeminent, "the bankruptcy court's decision not to require an adversary proceeding is subject to a harmless error analysis." Korneff v. Downey Reg'l Med. Ctr.-Hosp., Inc. (In re Downey Reg'l Med.

-17-

Ctr.-Hosp., Inc.), 441 B.R. 120, 127 (9th Cir. BAP 2010) (citing Austein v. Schwartz (In re Gerwer), 898 F.2d 730, 734 (9th Cir. 1990)); In re Cogliano, 355 B.R. at 806 ("Rule 7001(2) requires an adversary proceeding, absent waiver or harmless error . . . .") (emphasis added); and USA/Internal Revenue Serv. v. Valley Nat'l Bank (In re Decker), 199 B.R. 684, 689 (9th Cir. BAP 1996). The issue then becomes whether some procedural difference between contested matters and adversary proceedings prejudiced the Debtors in any meaningful way. See Korneff, 441 B.R. at 127.

At the outset, we note that the Debtors did not assert any argument that the Trustee needed to proceed by adversary proceeding rather than by motion until they filed the 2d Response on July 3, 2013, and while making the procedural point, the Debtors did not claim any prejudice to them resulting from the Turnover Motion or the 2d Exemption Objection being considered as contested matters. In their Motion to Vacate, the Debtors did not renew their procedural objection. In Debtors' Position, the Debtors again argued that property interests had to be determined in an adversary proceeding, but again did not assert any prejudice resulting to them from determining the Turnover Motion and the Motion to Vacate as contested matters.

In the meantime, the parties had multiple opportunities to brief their respective positions and conduct discovery for many months before the final Hearing. During that period, both of the Debtors had their Rule 2004 examinations taken. Debtors never argued to the bankruptcy court that they were not properly served with the Trustee's papers or did not receive notice of scheduled proceedings. The bankruptcy court's decisions at the Hearing

-18-

were based on undisputed facts. Ultimately, the Debtors retained all of the assets to which they were entitled against the estate, and they do not argue otherwise in this appeal.

In these circumstances, we agree with the bankruptcy court's conclusion, consistent with Rule 7001(1), that an adversary proceeding was not required. But, even if at some point Rule 7001(2) could be interpreted as requiring the filing of an adversary proceeding by the Trustee to resolve "property of the estate" issues, the bankruptcy court's determination to proceed to decide the Turnover Motion and the Motion to Vacate as contested matters did not prejudice the Debtors and was no more than harmless error.

C. <u>Reasonableness of Fees</u>

Finally, the Debtors challenge the reasonableness of the attorneys' fees and costs awarded to the Trustee by the bankruptcy court. The bankruptcy court awarded attorneys' fees and costs to the Trustee based on its determinations that the Debtors had "dragged this out for too long," had not "responded forthrightly to the Trustee" and had caused "extensive pleadings" – in other words, had not cooperated with the Trustee as required by § 521(a)(3) and (4) and Rule 4002(a)(4). We presume that in making the award, the bankruptcy court relied on § 105(a)'s provision that the bankruptcy court "may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." Cf. <u>Arnold v. Gill (In re Arnold)</u>, 252 B.R. 778, 789 (9th Cir. BAP 2000):

> A number of courts have recognized the possibility of prejudice to the trustee, and the possible prejudice from litigation costs. [citations omitted] However, as

-19-

all but the earliest of these five cases suggest, any such prejudice can be mitigated or eliminated by conditioning allowance of the amended exemption on payment of the trustee's and counsel's fees and costs from assets not otherwise available to the estate.

The Debtors did not contest the bankruptcy court's authority to award the Trustee fees and costs at any point in the proceedings. Debtors did not argue otherwise in their opening brief to this Panel, and at oral argument, Debtors' counsel conceded that a failure to cooperate finding against debtors in a chapter 7 case would justify an award of attorneys' fees and costs to the trustee. At the Hearing, Debtors' counsel repeatedly stated that he would not object to an order that required the Debtors to pay a portion of the Trustee's attorneys' fees and costs and conceded that a split of the attorneys' fees and costs would be "fair." In these circumstances, we conclude that any issue Debtors might have raised as to the bankruptcy court's general authority to award the Trustee's fees and costs against them has been waived. See Beverly Cmty. Hosp. Ass'n v. Belshe, 132 F.3d 1259, 1267 (9th Cir. 1997); and Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994).

What Debtors did argue is that the award of fees and costs against them was not reasonable in this case. Under § 330(a)(1), after notice and an opportunity for a hearing, the bankruptcy court can award to the trustee reasonable compensation for the "actual, necessary services" of the trustee's counsel and reimbursement for trustee's counsel's "actual necessary expenses."

The Trustee first requested an award of reasonable fees and costs against the Debtors in the Turnover Motion and reiterated

-20-

that request in various pleadings thereafter. The Trustee provided a detailed, itemized listing of attorneys' fees and costs ("Itemization") as Exhibit A to Trustee Position.

In Debtors' Position, the Debtors argued the fault/mistakes prolonging the subject matters before the bankruptcy court lay primarily with the Trustee and his counsel, and therefore, "it would be unfair for the debtors to incur additional fees for the mistakes made by the estate." However, the Debtors did not challenge the reasonableness of Trustee's counsel's billing rates or of any of the particular time entries or costs incurred by Trustee's counsel as set forth in the Itemization.

At the Hearing, the bankruptcy court determined that the Trustee's attorneys' fees and costs did "not appear unreasonable." Debtors' counsel never contested the reasonableness of the amount of Trustee's attorneys' fees and costs at the Hearing. In fact, as noted above, Debtors' counsel suggested that an award of "at least a portion" of the Trustee's attorneys' fees and costs would be fair.

> Mr. Piekarski: There were – there were a couple errors, but at the same time the estate is also not faultless here either. It cuts both ways. So, if there was some kind of, you know, splitting the difference I'm not sure that we would object. I think that would be a fair outcome.

Tr. of Feb. 5, 2014 hr'g, 16:12-16 (emphasis added).

"Ordinarily, if an issue is not raised before the trial court, it will not be considered on appeal and will be deemed waived." Levesque v. Shapiro (In re Levesque), 473 B.R. 331, 335 (9th Cir. BAP 2012). See Beverly Cmty. Hosp. Ass'n v. Belshe, 132 F.3d at 1267. "We review only issues which are argued

-21-

specifically and distinctly in a party's opening brief." Greenwood v. FAA, 28 F.3d at 977, citing Miller v. Fairchild Indus., Inc., 797 F.2d 727, 738 (9th Cir. 1986). Since the Debtors did not raise before the bankruptcy court and did not argue in their opening brief to this Panel any specifics as to the reasonableness of the billing rates charged by Trustee's counsel or the reasonableness of the amount of the Trustee's attorneys' fees and costs awarded by the bankruptcy court, any such arguments are waived.

However, if we review generally whether the Trustee's retention of counsel and counsel's work on behalf of the estate in this case were reasonable and beneficial (see, e.g., § 330(a)(3)(C) and (a)(4)(A)(ii)(I); Leichty v. Neary (In re Strand), 375 F.3d 854, 860 (9th Cir. 2004)), we consider the following: Debtors did not disclose six bank accounts in their original schedules, and with regard to the two accounts they did disclose, they claimed all funds on deposit as exempt. Only after investigation by the Trustee and the filing and pursuit of the Turnover Motion did the estate recover $1,005.73 nonexempt funds from the Debtors' bank accounts. As late as May 2013, the Debtors were asserting only $273.72 of their bank deposits was not exempt, and they would turn over even that much only "upon the request of the Trustee." At oral argument, Debtors' counsel conceded that the Trustee needed the assistance of counsel in investigating and recovering the nonexempt portions of the deposits in the Chase Bank accounts.

As to the 529 Plans, as Debtors' counsel admitted at the Hearing,

-22-

> Mr. Piekarski: We have never disputed that the monies the Debtors paid into the 529 accounts within the preceding – one year before the filing date is subject to turnover. That's never been an issue. They're ready to turn that money over once there is a firm number given to them. <u>They knew that. We discussed that before the case was ever filed</u>.

Tr. of Feb. 5, 2014 hr'g, 11:9-16 (emphasis added). Of course, if those statements were accurate, when Debtors and their counsel were served with the Exemption Objection, they could have responded with the necessary documentation and disclosed the nonexempt amount to be turned over to the Trustee. Only the Debtors, and certainly not the Trustee, knew at that point in time what contributions they had made to the 529 Plans during the year preceding their bankruptcy filing. Instead, the Debtors did not respond to the Exemption Objection at all and set in motion the lengthy and expensive process leading through the filing of the Turnover Motion and the Motion to Vacate and culminating in the Hearing.

In these circumstances, the Trustee needed the services of counsel to perform his duties of investigating the Debtors' assets and maximizing the recovery for the estate through liquidating nonexempt assets. Contrary to Debtors' argument, we find no error in the bankruptcy court's conclusion that it was Debtors and their counsel who were not forthright with the Trustee and unnecessarily prolonged proceedings. We conclude that the bankruptcy court did not abuse its discretion in awarding the Trustee's reasonable attorneys' fees and costs against the Debtors.

///

///

-23-

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.